UNITED STATES ex rel. DAVERSE v. HOHN.

Civ. A. No. 9971.

United States District Court
W. D. Pennsylvania.

Nov. 9, 1951.

Sebastian C. Pugliese, of Pittsburgh, Pa., and Paul K. McCormick, of Greensburg, Pa., for relator.

Randolph C. Ryder, Asst. Atty. Gen., L. Alexander Sculco, Dist. Atty. of Westmoreland County, Pennsylvania, New Kensington, Pa., and C. Ward Eicher, Asst. Dist. Atty. of Westmoreland County, Pennsylvania, Greensburg, Pa., for respondent.

BURNS, District Judge.

Relator and respondent agree that, under the circumstances of this case, state remedies have been exhausted

 The instant petition for habeas corpus contains allegations which, in the opinion of relator, prove that he was deprived of the fair trial guaranteed him by the Fourteenth Amendment. Of the questions presented by the allegations, only that pertaining to the alleged bias of James Bridge, a member of the jury which convicted relator, seems to me of a nature wherein violation of the Fourteenth Amendment could be involved; for I do not believe the Federal Constitution forbids a state from conducting a medical examination of the prisoner with a view to determining his responsibility, when indications are that his mental condition may be a factor in the criminal trial, and thereafter permitting such testimony at his trial; nor would the Federal Constitution consider a note by the judge to the jury, such as that here involved [1] a fatal flaw in the conduct of the trial. Consequently, I directed that the hearing upon relator's petition be limited to the issue of the alleged bias or bigotry of James Bridge, the juror.

 I believe that relator has failed to prove his allegation that James Bridge was biased against relator, either prior to the time of his selection as a juror or during the trial itself. Whatever uncertainties might arise as to the personal habits of Mr. Bridge, and particularly any statements which he may have made under the influence of liquor, I am satisfied that he reached his verdict on the basis of the evidence presented at the trial, and not by virtue of any personal animosity or antagonism which he felt toward either relator or Italians in general.

This Court wishes it clearly understood that, in granting a hearing which probed the state of a juror's mind after the trial and which included testimony revealing that jurors had been contacted after the trial, this Court in no way intended to condone such a practice. The public policy against interviewing jurors seems to me a salutary one, worthy of rigid enforcement. I permitted testimony to be received in this case because a man's life was at stake, and I deemed it necessary to resolve the question of whether that life was being sacrificed to a personal vendetta by a juror who had violated his oath. The propriety of the conduct of the investigation of the juror I leave to the appropriate authorities.

In view of the foregoing findings, I deem it unnecessary to pass upon the questions raised in the motion to dismiss filed by the Attorney General of the Commonwealth.

---

* According to a stipulation signed by Paul K. McCormick, Esq., Daverse's counsel at the murder trial, and the District Attorney of Westmoreland County, the jury sent the following note to President Judge Richard D. Laird, the trial judge: "If we, the jury, find the defendant guilty of first degree murder with life imprisonment, will he remain in prison the rest of his life, or will he have a chance to be released later on?"; Judge Laird, after showing the note to the aforementioned counsel, returned the note to the jury with the following statement: "The Court is not permitted to answer the question you have submitted."