## UNITED STATES ex rel. DAVERSE v. HOHN.

### No. 10656.

United States Court of Appeals
Third Circuit.

Argued June 3, 1952.

Decided Sept. 17, 1952.

---

Sebastian C. Pugliese, Pittsburgh, Pa. (Paul K. McCormick, Greensburg, Pa., on the brief), for appellant.

C. Ward Eicher, Greensburg, and Randolph C. Ryder, Harrisburg, Pa. (L. Alexander Sculco, Dist. Atty., Greensburg, Pa., Frank P. Lawley, Jr., Asst. Deputy Atty. Gen., Robert E. Woodside, Atty. Gen., on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and STALEY, Circuit Judges.

BIGGS, Chief Judge.

On March 5, 1949, Daverse was convicted of first degree murder, and the penalty fixed at death by the jury in the Court of Oyer and Terminer, Westmoreland County, Pennsylvania. A motion for a new trial was denied by that court on December 31, 1949, and on May 22, 1950, Daverse's conviction was affirmed by the Supreme Court of Pennsylvania. See Commonwealth v. Daverse, 364 Pa. 623, 73 A.2d 405. On March 30, 1951, Daverse petitioned the Supreme Court of Pennsylvania for an order to authorize the Court of Oyer and Terminer to issue a rule for a new trial "nunc pro tunc". See 19 P.S.Pa. § 861. This was denied without opinion. On April 6, 1951, Daverse presented a petition for a writ of habeas corpus to the court below. That court entered an order, dated April 9, 1951, directing the relator to apply to the Supreme Court of Pennsylvania for a writ of habeas corpus. Daverse complied with the order on April 11, and eight days later the Supreme Court of Pennsylvania filed its opinion denying the writ.[1] On April 27 the relator petitioned the Supreme Court of the United States for a writ of certiorari. The petition was denied on October 8, 1951. See 342 U.S. 812, 72 S.Ct. 25. On October 30 Daverse renewed his application for a writ of habeas corpus in the court below. The petition for habeas corpus filed in the court below set forth all grounds, save one which need not be detailed here, raised by the petition filed in the Supreme Court of Pennsylvania. The United States District Court on the same day ordered that a hearing be held on November 8, 1951. Following the hearing, the court delivered its opinion, D.C., 101 F.Supp. 17, and decreed that the petition be dismissed. Daverse has appealed from that order.

Before passing on other questions presented by this appeal, we think it desirable to comment briefly on the jurisdiction, the power, of the United States District Court to entertain Daverse's petition following the denial on its merits of a petition, identical in substance, by the Supreme Court of Pennsylvania and the refusal of the Supreme Court of the United States to grant a writ of certiorari. It is conceded that the relator has exhausted his State remedies. The question is whether the United States District Court may again examine the merits of Daverse's petition. In the absence of contrary directions from the Supreme Court of the United States, this court has settled this question in the affirmative. See United States ex rel. Smith v. Baldi, 3 Cir., 192 F.2d 540.

Daverse sets up three principal contentions in his petition for habeas corpus. None of these was considered in his appeal to the Supreme Court of Pennsylvania from the judgment of conviction, for the alleged facts on which these contentions are based were dehors the trial record. Daverse alleges: (1) that one James Bridge, a member of the jury which convicted him, entered on his duties as juror with a fixed opinion that Daverse was guilty and with such prejudice against persons of Italian extraction (of which relator was one) as to make it impossible for Bridge to exercise fair and impartial judgment; (2) that during the deliberations of the jury and in the absence of the relator, the jury transmitted a note to the trial judge and, after the judge had consulted with counsel for the parties, received from the judge a written instruction the contents of which are unknown to relator; and (3) that prior to the relator's trial and over objection of his counsel, the District Attorney obtained a court order authorizing an examination of Daverse by two psychiatrists employed by the Commonwealth, and that this examination took place in the absence of Daverse's counsel and included questions as to the commission of the crime and Daverse's possible defenses to the indictment. The relator urges that these allegations, assuming them to be true, establish that he has been deprived of his rights under the Pennsylvania Constitution and the Constitution of the United States.

The court below held that relator's second and third contentions were wholly without merit and therefore restricted the

---

1. This opinion is not reported in the Pennsylvania state reports. The copy of it on p. 112a of the appendix to appellee's brief is identified as: "MP 424 In the Supreme Court of Pa. Western District No. 1780 Miscellaneous Docket".

hearing of November 8, 1951 to the question of bias and prejudice of the juror Bridge. This restriction constitutes the first error claimed by Daverse.

■ The relator would have us presume substantial prejudice to him because of his absence during the transactions between the trial judge and the jury respecting the note sent by the jury to the Court. While it is settled in Pennsylvania that neither "court nor judge can take any step affecting [a defendant's] right in his absence", Commonwealth v. Corsino, 261 Pa. 593, 104 A. 739, 740, we conclude this rule has no application under the circumstances of the instant case. Daverse's petition itself indicated that the note transmitted to the trial judge contained only a question as to the eligibility of a life prisoner for parole and that the judge's instruction was nothing more than a refusal to answer the question.[2] There is here no such violation of relator's rights as would deny him due process of law. "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 333, 78 L.Ed. 674. See United States ex rel. Auld v. Warden of New Jersey State Penitentiary, 3 Cir., 187 F.2d 615. The court below did not err in denying a hearing on this issue. So much for the second point raised by the relator.

■■ The propriety of the relator's examination by state psychiatrists prior to trial is even less doubtful. While it would be undesirable to permit such an examination to serve as a fishing expedition for incriminating evidence, the relator's examination was conducted in good faith for the purpose of determining his criminal responsibility at the time of the commission of the crime. Relator had already confessed to his actions on the night of the crime. His counsel had notice of the time and place of the examination. The transcript of Daverse's answers to the psychiatrists' questions, the psychiatrists' report, and their account of the interview with Daverse were not received in evidence at the trial. In view of these facts the relator's third contention does not establish a denial of constitutional rights. Even if the examination could be proved to be violative of the relator's privilege against self-crimination under the Pennsylvania Constitution, this action by the Commonwealth could not stand as a basis for the argument that the relator was deprived of rights under the Fourteenth Amendment under the circumstances at bar. See Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903; Twining v. New Jersey, 211 U.S. 78, 29 S. Ct. 14, 53 L.Ed. 97, where state statutes had deprived the defendants of the privilege against self-crimination. The obliteration from the hearing of the third point raised by Daverse was clearly warranted by the law.

■ Before proceeding to discuss the first point raised by the relator, viz., the competence of Bridge as a juror, it is necessary to refer briefly to a specific ruling made by the court below as to a proffered amendment to the petition for habeas corpus. Rather tardily and on the opening day of the hearing Daverse offered an oral amendment, albeit in precise form, to the petition seeking to add the following allegation to the sixteenth paragraph of the petition for habeas corpus: "And that * * * [the] juror [James Bridge] may be suffering from a mental disease of the paranoid type and a prejudiced and fixed opinion and tendency to falsehood on the part of said juror, may be due to such mental disease."[3] The court denied leave to make the proposed amendment.

2. It was so stipulated by the District Attorney and relator's trial counsel, both of whom were present. A copy of the stipulation was annexed to relator's petition. The jury asked: "If we, the jury, find the defendant guilty of first degree murder with life imprisonment, will he remain in prison the rest of his life, or will he have a chance to be released later on?" The judge answered: "The Court is not permitted to answer the question you have submitted."

3. The sixteenth paragraph of the petition alleged: "Your relator verily believes that if it had not been for the prejudice and fixed opinion on the part of this juror

We conclude that this was not error. We do not have to pass upon legal questions which might have been before us had it been alleged specifically that Bridge was in fact mentally incompetent or "insane"[4] for the amendment offered did not make a direct allegation that Bridge was actually suffering from a mental disease. The proposed amendment itself is hedged with doubt. If a juror's mental competence is to be attacked at the late stage offered by a habeas corpus proceeding, the charge must be made in much more certain terms and not on a tentative basis. A fishing expedition into a juror's competency may not be employed as a basis to attack a conviction valid on its face. To rule otherwise would be to strike a serious blow at the sanctity of the jury system for any juror, who it was alleged might be suffering from paranoid tendencies, could in effect be put on trial as to his mental competence.[5] We cannot sanction such a course. It would make it impossible to procure veniremen. But the important factor in the instant case is that the proposed amendment, like the allegations of paragraph sixteen of the petition, emphasized the asserted fact that Bridge was "prejudiced" and of a "fixed opinion". The substantial issue is whether Bridge was prejudiced and biased for any reason whatsoever, and this issue is raised repeatedly in various other allegations of the petition.

■ There was evidence that Bridge on occasion drank too much and that, when under the influence of liquor, he sometimes used slang expressions, considered by some to be opprobrious,[6] to designate persons of Italian extraction. Bridge, however, ob-viously was a man of but small education and of limited vocabulary and background —facts which must be taken into consideration in weighing what he is alleged to have said. There was also testimony that his reputation for truth and veracity was poor and the affidavit of Daverse's private investigator, who had interviewed Bridge at his home, and who had reported statements made by Bridge which, if believed, showed prejudice against Italians in general and Daverse in particular. But Bridge denied flatly and under oath that he had known Daverse before the trial or that he had prejudged Daverse's case. Bridge testified that he had no racial prejudices. The issue of Bridge's bias and prejudice, his state of mind at the trial, was one of fact for the court below. We cannot say that the court below was clearly erroneous in finding that Bridge was not biased and prejudiced.

In the light of our ruling we need not decide whether the court below departed from the prescribed procedure in permitting Bridge to be called as a witness for cross-examination by Daverse. See Fed.Rules Civ.Proc., Rule 43(b), 28 U.S.C.A. But we wish to make plain that we join the court below in disapproving in general the practice of interviewing a juror after a trial as to his state of mind during the trial. There may conceivably be special circumstances which could justify such a course but we do not find them here. A full exercise of the right of *voir dire* examination ordinarily will afford a defendant ample opportunity to ascertain the qualifications of a prospective juror and to determine whether he possesses bias and prejudice. In the interest of encouraging citizens to serve on juries without fear of later disparaging in-

he would not now be under sentence of death and that therefore he is about to be deprived of life by a violation of his rights under the Constitution of the United States."

4. Paranoia is defined as a "Mental aberration especially, a chronic disease characterized by systemitized delusions."; paranoid, as "Resembling paranoia."; and a paranoiac as "A person who is affected with paranoia, 'a crank'." See Gould's Medical Dictionary, 5th ed.

5. It is not our function to comment on the general qualities of Bridge or any other juror in a State court proceeding. We are concerned only with the issue as to whether Daverse's constitutional rights have been violated.

6. None of this was brought to light on Bridge's *voir dire* examination though ample opportunity was offered. We pass this point by, however.

quiries into their lives and personal habits we state that the answers given by a juror under oath on the *voir dire* should not be challenged through subsequent questioning of that juror except under exceptional circumstances. While Bridge was not expressly questioned as to his possible bias and prejudice on *voir dire*, he stated that he had no previous knowledge of the case, that he did not know relator or any member of his family and that he would try the case according to the evidence and the law. Daverse's counsel did not exercise his right of examination beyond the point indicated.

The trial court next excluded from evidence a .22 caliber revolver found in Bridge's possession long after the trial. One of Daverse's witnesses testified that this weapon was identified to him by Bridge as the murder weapon which was missing during Daverse's trial in the Court of Oyer and Terminer. The relator's counsel asserted in the court below that if the gun was the murder weapon, the circumstances under which Bridge acquired it would be "important". He did not state why. Not until the appeal to this court did Daverse's counsel advance the suggestion that the gun might have been given Bridge as reward for his services as juror. This suggestion seems to us to be farfetched and an afterthought. At any rate the evidence as to the revolver offered by Daverse seems rather remote to the issue of Bridge's alleged bias and prejudice. We cannot say that the court below erred in excluding it.

What we have said as to remoteness from the issue of Bridge's bias and prejudice in respect to the evidence offered as to the .22 caliber revolver must be reiterated more strongly as to his offer to put in evidence the master's report of the uncontested divorce action brought in 1933 against Bridge by his wife. As to this proffered evidence we state bluntly that the relator has gone very far afield indeed.

No other points raised by the parties need be referred to or discussed in this opinion.

The judgment of the court below will be affirmed.