**UNITED STATES v. KAFES.**

No. 11137.

United States Court of Appeals Third Circuit.

Argued June 7, 1954.

Decided July 13, 1954.

Rehearing Denied Aug. 6, 1954.

888

J. Richard Kafes, Trenton, N. J. (Kahn & Schildkraut, Trenton, N. J., on the brief), for appellant.

George J. Rossi, Asst. U. S. Atty., Newark, N. J. (William F. Tompkins, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a conviction for violation of sections 145(a) and 145 (b) of the Internal Revenue Code, 26 U.S.C.A. The alleged 145(a) violations cover the years 1949 and 1950, while the alleged 145(b) violations cover the calendar years 1946 to 1950, inclusive. The indictment was in seven counts, and the jury returned a verdict of guilty in all. The trial judge sentenced the defendant to imprisonment for one and one-half years on each of counts one to five and for one year on counts six and seven, respectively, but provided that the sentences on all seven counts were to run concurrently.

The defendant has raised numerous points as reasons for reversal of the judgment against him. They will all be noticed but not in the order in which they were presented.

I. Fair Trial.

The first and what seems to us the most serious argument for reversal is that the defendant did not get a fair trial. If this allegation were borne out by the record we should, of course, order a new trial as we have in numerous other cases. Obviously the way to investigate this matter is not on the basis of the quotations here and there from colloquies between judge and counsel over an eight-day trial, but to read the report of the proceedings as the trial went on. When this is done the allegations that the defendant did not get fair treatment are not supported. The defendant, who is a member of the bar, conducted most of his own defense. As would be expected under the circumstances, he endeavored to take advantage of all points which he conceived to be in his favor. There were numerous exchanges of remarks between the court and the defendant whose position on some legal points was quite different from that of the judge. Occasionally the judge reproved defendant, but he also assisted him at times in phrasing a question to bring out a point. He allowed very great freedom in cross-examination of the government's witnesses. The impression from the reading of a long record is that the trial was conducted with fairness and with as few clashes as this type of litigation would be expected to produce. See United States v. Stoehr, 3 Cir., 196 F.2d 276, 33 A.L.R.2d 836, certiorari denied 1952, 344 U.S. 826, 73 S.Ct. 28, 97 L.Ed. 643.

II. The Charge.

Complaint is made also that the judge's instruction to the jury was not a fair one. This complaint is not supported by a reading of the charge. It was full, it was fair. The court endeavored to refresh the memory of the jurors by recounting the testimony of

witnesses. The defendant complains that the court emphasized matters unfavorable to him and left out those which were favorable to him. As a matter of fact, the court could have gone much further than it did in commenting on the testimony. It is to be noted that in the course of his instructions the judge told the jury:

"If, during the trial of the case, it was necessary for the court, in a legal fashion, to rap the knuckles of either one of these gentlemen [counsel], that has absolutely nothing to do with the case in the slightest respect because they were advancing their own particular theory of the case as they, as lawyers, must do. So that has nothing to do with it. By and large, I guess, the best yardstick that I could possibly give you is the oath of office that you took when you started to hear the case that 'you and each of you do solemnly swear that you will well and truly try this issue, and a true verdict render, according to the evidence, so help you God.'"

We are completely satisfied that there is no ground for reversal either in the general conduct of the trial or in the instructions to the jury.

### III. Illness of a Juror.

The defendant urges that there should be a reversal because one of the jurors became ill during the jury's deliberations and therefore he had a verdict by eleven instead of twelve jurors. What happened was this. After the jury had been out for some time and had received additional instructions on one point, a request came that some Alka Seltzer be secured for one of the jurors. This was agreed to by counsel and the article was sent to the jury room. Subsequent to the trial the defendant offered statements from two of the jurors to the effect that the forewoman was affected by indigestion during the time the jury was out and that she did not take part in the deliberations for a portion of the time. On the other hand, we have a memorandum from the trial judge that he interviewed the juror in question, who declared that she was not incapacitated.

We think a jury system cannot be made to work if, after trials, verdicts may be attacked by such affidavits from jurors. Suppose it is to be shown that one juror took a nap, or that another refused to participate in the general discussion of the case at hand, or that another used bad language and thus intimidated more timid members of the jury. There is no limit to the number of attacks on a verdict which could be made if this kind of thing were permitted. Jurors are selected with care; they take an oath to perform their duty; and their verdict is not to be impeached by affidavits of this type. Parsons v. United States, 5 Cir., 1951, 188 F.2d 878; United States v. Furlong, 7 Cir., 194 F.2d 1, certiorari denied 1952, 343 U.S. 950, 72 S.Ct. 1042, 96 L.Ed. 1352. See also United States ex rel. Daverse v. Hohn, 3 Cir., 1952, 198 F.2d 934, certiorari denied 1953, 344 U.S. 913, 73 S.Ct. 336, 97 L.Ed. 704; United States ex rel. Darcy v. Handy, 3 Cir., 203 F.2d 407, certiorari denied 1953, 346 U.S. 865, 74 S.Ct. 103.

### IV. Bill of Particulars.

Prior to the trial the defendant asked for a bill of particulars. This motion was heard by Chief Judge Forman, who denied it except as to one request, which was:

"4. Set forth with particularity what records it is contended the defendant avoided making that he should have made in the usual course of transactions in which he participated."

This the government answered as follows:

"4. The Government contends that, under Bureau of Internal Revenue Regulations 29.54-1, 26 CFR, Part 29.54-1 adopted pursuant to Title 26, United States Code, 54(a), the defendant was under a duty, for the purpose of enabling the Commissioner of Internal

Revenue to determine the correct amount of his income subject to income tax, to keep such permanent books of account or records as would be sufficient to establish the amount of his gross income and the deductions, credits, and other matters to be shown in his return; to keep such books and records at all times available for inspection by Internal Revenue officers, and to retain them so long as the contents thereof might become material in the administration of the Internal Revenue law.

"Other than the foregoing, no particular forms of records are specified in the statutes or regulations.

"The Government contends that the defendant avoided making and keeping records of his income which would meet the foregoing requirements."

■■ The granting of a bill of particulars is a matter for the trial court's discretion. See United States v. Caserta, 3 Cir., 1952, 199 F.2d 905, 910. We think that discretion was not abused here. It is significant, we think, that the defendant did not during the trial claim surprise and ask a continuance. Nor does he now show us how he was hurt by the lack of a bill of particulars.

## V. Postponement of the Trial.

■ The same rule about exercise of discretion applies to the complaint that defendant was not given a postponement of his trial. He had had one continuance. He asked for another. This was denied. We do not think there was any abuse of discretion in this respect either.

## VI. The Statute of Limitations.

■ Complaint is made of the trial court's refusal to dismiss count one because it was barred by the statute of limitations. Count one has to do with the attempt to "defeat and evade" for the year 1946. The indictment was returned February 24, 1953. The period of limitation is six years. 26 U.S.C.A. § 3748(a) (2). The government answers, however, that the alleged offense concerning the 1946 tax did not become complete until March 15, 1947. This was the day when payment became due, it says, and, therefore, the statute did not start to run with regard to the year 1946 until the March 15th following. We agree. We think that this is a complete answer.

## VII. Election between the Evasion Counts and Wrongful Failure to File Counts.

The defendant endeavored to compel the prosecution to elect between counts four and five, which were for the willful attempt to evade under section 145(b), and counts six and seven, which charged willful failure to file returns for the same two years, under section 145(a). The argument is that the provision against double jeopardy makes it unconstitutional to make the misdemeanor of failing to file one of the circumstances to be considered in determining whether there has been any attempt to evade the tax, a felony.

■ Sections 145(a) and (b) define separate offenses. Since Spies v. United States, 1943, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, it has been clear that a showing of a failure to file plus other affirmative acts is sufficient to sustain a conviction under section 145(b), but that a willful failure to file alone is not sufficient. See United States v. Smith, 3 Cir., 1953, 206 F.2d 905. In the present case, the trial court correctly charged that there was evidence of acts of commission which could supply the needed quantum: for example, defendant's avoidance of making proper books of account and records; his failure to enter some items in the duplicate receipt books that he did finally begin to keep; and the cashing of checks without clearance through his bank account. See Spies v. United States, supra, 317 U.S. at page 499, 63 S.Ct. at page 368.

■ Nevertheless, the question remains whether, since the section 145(a) violation was used to prove in part the section 145(b) violation, defendant could

be convicted for the misdemeanor. The governing rule has been reiterated recently by the Supreme Court in Pereira v. United States, 1954, 347 U.S. 1, 9, 74 S.Ct. 358, 363: "* * * [D]efendant may be convicted of [two separate offenses] even though the charges arise from a single act or series of acts, so long as each requires the proof of a fact not essential to the other." It is not necessary to prove a failure to file to convict for an attempt to evade; for example, section 145(b) may be violated by the filing of a false return. See United States v. Croessant, 3 Cir., 1949, 178 F.2d 96, certiorari denied, 1950, 339 U.S. 927, 70 S.Ct. 626, 94 L.Ed. 1348. Conversely, it is not necessary to show the acts of commission required by the Spies case to prove a willful failure to file a return. For further differences, see O'Brien v. United States, 7 Cir., 51 F.2d 193, certiorari denied, 1931, 284 U.S. 673, 52 S.Ct. 129, 76 L.Ed. 569. Defendant argues that, even though failure to file a return need not be shown to prove an attempt to evade, the double jeopardy provision is applicable when that failure is in fact used. The short answer to this contention is that the rule itself, as quoted above, sanctions the use of one act as part of the proof of both offenses.

VIII. The Evidence Supports the Verdict.

The defendant argues that as to the attempt to evade counts the evidence is insufficient to support the verdict. He does not urge this so much with regard to the wrongful failure to file returns. Indeed, there is evidence of an admission that he did not file returns because he did not have the money to pay his taxes, an excuse which, if valid, would undoubtedly be called upon by a great many of us. The case was thoroughly tried. The defendant showed the nature of his relations with persons who had paid him money and got into the record that the payments were "in ordinary course of business." The government investigators were thoroughly cross-examined. Defendant had failed to keep sufficient records to allow an audit of his receipts and expenditures in the ordinary way. The extent of his income had to be proved by showing how much he had taken in. This was a difficult task since defendant had kept money for clients, his own fees, and receipts from capital transactions without separating them in bank accounts. Defendant had before the jury his willingness to co-operate with the government investigators and got them on record in saying that he had done so. But, on the whole, the question whether he was attempting to evade his obligation to the United States was a jury question and the jurors decided against him. We cannot say that their conclusion was wrong.

This is a very hard case for the defendant because a conviction of crime of a member of the bar carries with it disastrous consequences, which might not be equally hard on one following some other means of activity for a livelihood. But the defendant had a fair trial, of that we are sure. We have considered all his points on appeal and do not think that there is such merit in any one of them or all of them together as to merit a reversal.

The judgment of the district court will be affirmed.