**UNITED STATES v. NYSTROM et al.**

**Crim. Nos. 13662 and 13665.**

United States District Court,
W. D. Pennsylvania.

Dec. 1, 1953.

772

Oliver O. Dibble, Washington, D. C., for plaintiff.

Charles J. Margiotti, Pittsburgh, Pa., H. Turner Frost, Pittsburgh, Pa., for defendants.

GOURLEY, Chief Judge.

In this criminal proceeding, both defendants, Hildur L. Nystrom and Samuel A. Kennedy, pose a motion for new trial. Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A.

The defendants were jointly indicted and tried on thirty-four (34) counts of three separate indictments for misapplication of bank funds in violation of Title 18, Section 656, U.S.C.A., and for conspiracy to misapply funds of the Union National Bank at McKeesport,

Pennsylvania, in violation of Title 18, Section 371, U.S.C.A.

Indictment No. 13662 originally contained twenty-two counts. Twenty-one counts of this indictment charged the defendants with making fictitious deposits in whole or in part. Counts 1 to 9 inclusive alleged that the whole deposit ticket was fictitious. Counts 10 to 21 alleged that deposit tickets were altered by adding to a deposit ticket and that the amount added was fictitious. Count 22 (referred to as the Vabich transaction) of said indictment alleged that the defendants made a deposit to Kennedy's special account which deposit was the proceeds of a check issued by an insurance company in the sum of $510, payable to John Vabich and the Union National Bank in full and final settlement of all claims of Vabich and the bank as a result of a fire loss to a truck owned by Vabich and insured, which check was to be applied on a loan made to Vabich by the bank on said truck but which amount was not credited to the loan account of Vabich in said bank.

In Indictment No. 13664, the defendants were charged on five substantive counts and one conspiracy count of misapplying bank funds by paying Kennedy's payroll checks from funds of the bank when Kennedy did not have a sufficient credit balance to cover and pay said checks.

In Indictment No. 13665, the defendants were charged on five substantive counts (involving 5 checks) and one conspiracy count of misapplying bank funds by paying NSF checks and making fictitious deposit tickets.

At the close of the government's evidence, each of the defendants submitted motions for judgment of acquittal on all the thirty-four counts of the three indictments. Due to insufficient evidence the Court entered judgment of acquittal for each defendant on Counts 2, 16 and 22 of Indictment No. 13663 (pertaining to fictitious deposits and the Vabich transaction); on all counts of Indictment No. 13664 (pertaining to payroll checks); on Counts 1 to 5 of Indictment No. 13665 (pertaining to NSF checks) and on that portion of Count 6 of said indictment pertaining to the conspiracy regarding the NSF checks, particularly overt acts 5 to 8. The Court refused the motions for judgment of acquittal on the nineteen substantive counts of Indictment No. 13662 and on the remaining portion of the sixth count of the Conspiracy Indictment No. 13665, alleging four overt acts. 115 F.Supp. 500. Both of these indictments pertain to fictitious deposits.

At the conclusion of all the evidence in the case, the defendants again moved for judgment of acquittal. The Court reserved decision on each of the defendants' motions and submitted the case to the jury.

On August 19, 1953, the jury returned a verdict of guilty as to both defendants on the nineteen substantive counts and the one conspiracy count.

Defendants' motions for judgment of acquittal were exhaustively argued in open court, and refused by formal opinion and order of this court dated October 21, 1953.

The government's theory of the case was as follows:

Kennedy, a businessman and customer of the Union National Bank, aided and abetted Nystrom, a teller, and both conspired over a three year period (January 1948 to December 1950) to misapply funds of the Union National Bank. This action was pursued by making fake deposit tickets in whole or in part to Kennedy's regular and special accounts in the Union National Bank for the purpose of padding those accounts in order to take care of Kennedy's NSF checks or overdrafts in the Union National Bank; that in making the fake deposits and honoring the NSF checks, Kennedy and Nystrom misapplied the bank funds with intent to injure and defraud the bank; that because of the pending merger and expected audit of the Union National Bank and Peoples Bank (the merger occurred on February 24, 1951) to the

knowledge of Nystrom, Nystrom staged or faked a holdup to cover up a shortage of $58,744.

Defendants' theory of the case was that there was no misapplication of bank funds; that it was the policy of the bank to pay Kennedy's NSF checks; that the deposit tickets were not fictitious but genuine in that Kennedy made the deposits to his regular and special accounts from his own personal funds when his said business accounts needed money, and that subsequently he reimbursed himself from business funds from time to time by either deducting the amounts from subsequent deposit tickets when he made a deposit to his business account or by drawing a check on his business accounts to himself.

It should be noted that this trial consumed approximately 73 days of trial, that a mass of oral and documentary evidence was produced by both the government and defendants, which if transcribed, is estimated to comprise a record in the area of ten thousand pages. Over one hundred witnesses were called and testified, and over eleven hundred exhibits were introduced.

### There Is Not Sufficient Evidence to Support a Conviction

The basic argument advanced by the defendants is the thesis that insufficient evidence exists to support a conviction. In disposing of this contention, I am governed by the rule of law which directs that in considering the sufficiency of the evidence to sustain the verdict of a jury, the court must give to the government the benefit of all inferences which reasonably may be drawn from the evidence; and must refrain from concerning itself with the credibility of witnesses and the weight of the evidence. The verdict of the jury must be sustained if substantial evidence supports it. United States v. Haynes, D.C., 81 F.Supp. 63, affirmed 3 Cir., 173 F.2d 223; United States v. Michener, 3 Cir., 152 F.2d 880, 885; Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

Undoubtedly, as defendants contend, the government resorted to testimony which was exclusively of a circumstantial nature. I must further agree with defendants that the government failed to develop by direct evidence the existence of a permanent or partial bank shortage at any time during the period laid in the indictment.

Nevertheless, the government established that an alleged holdup was staged shortly prior to the merger of the Union National Bank and Peoples Bank, under most unusual circumstances of stealth and secrecy, so that only Nystrom had knowledge of its happening; that numerous deposit slips were deposited with amounts subsequently added thereto in handwriting other than Kennedy; that numerous of the deposits credited Kennedy at the Union National Bank were not reflected in Kennedy's personal records; that Nystrom occasionally assisted Kennedy in the preparation of his private business accounts; that deposits of certain amounts were made when Kennedy allegedly did not have sufficient money on hand to make deposits in the amounts indicated.

No burden reposes upon the government to show final permanent loss to the bank. A momentary loss is sufficient. United States v. Matsinger, 3 Cir., 191 F.2d 1014.

I can appreciate how a jury apprized of all the facts and circumstances of the Government case could reasonably infer that even though not discovered during the period laid in the indictment, an actual shortage did exist at the Union National Bank at McKeesport at one time or the other, although not permanent in nature.

True enough, each circumstantial fact, isolated from the others, in and of itself, would not establish the offenses charged. But looked upon as a composite picture, the numerous parts combine and merge with striking regularity and symmetry into the completed portrait.

We are well aware that a conspiracy is rarely done in the open or in the pres-

ence of disinterested persons. Thus, if conspiracies are to be established at all, it is frequently necessary that their existence be shown by other than direct evidence.

■ Cognizant of the prerogative of the jury to resolve issues of credibility, assuming the truth of the government's evidence, and giving the government the benefit of all legitimate inferences to be drawn therefrom, it is my judgment that sufficient evidence was adduced to sustain the verdict of guilty as to each count.

### No Proof That Kennedy Received Any Money from the Robbery

■ Defendants contend that the court erred in refusing defendants' motion to withdraw a juror and declare a mistrial on the premise that Government counsel, in his opening address to the jury, stated that of the money stolen in the alleged bank robbery, $37,480 had gone to ·Kennedy, while in the trial of the case no such evidence was produced.

In this connection, on several occasions this Court instructed the jury that they were not to consider the opening arguments of either counsel or anything said by them as evidence. I cannot see, therefore, how this error would affect the substantial rights of the defendants or produce such prejudicial effect as to deny defendants a fair and impartial trial.

### Misconduct of Government Counsel and Government Witnesses

In this criminal trial, which consumed seventy-three court trial days, allowing for numerous interruptions, delays and recesses necessitated by the limited complement of this court (my associate, Judge Marsh, then being engaged in the prolonged trial of the Smith Sedition cases and Judge McVicar operating on a semi-retired basis), I was frequently compelled to recess this trial to hear emergency matters which under law required summary disposition—with the effect that such prolongation was conducive to unfortunate conversations and incidents occurring between government counsel and government witnesses.

Thus, defendants refer to an instance when government counsel is alleged to have mentioned to a juror that jurors were to get a vacation by reason of a court recess; or when an FBI agent, who was serving as a government witness, and a specific juror are alleged to have winked at each other when each of the jurors was handed a certain defense exhibit.

■ In the former incident, the court in chambers and in the presence of defense counsel admonished the government prosecutor to abstain from any conversation whatever with members of the jury, and reiterated its determination to conduct a trial cleansed of any conceivable taint of impropriety. To assuage any doubts on the part of defense counsel, the Court requested the defense to make a motion for a mistrial if such were desired, and defense counsel emphatically refused to make such motion.

■ With respect to the winking episode, the Court most assiduously examined the government witness who unreservedly denied the conduct complained of. Nor in the latter incident did defendants move for the withdrawal of a juror and a mistrial.

In a recapitulation of this most involved and lengthy trial, I am satisfied that no untoward incident occurred during its trial which could have brought substantial prejudice to defendants. The isolated events to which defendants make reference were dealt with most speedily and decisively so as to expunge the slightest taint of prejudice which might have redounded to the prejudice or benefit of any of the principals involved.

### Evidence Admitted and Later Deleted in Judgment of Acquittal

■■ Defendants complain that the Court erred in refusing defendants' motion to withdraw a juror and continue the case after the Court entered judgment of acquittal on all counts of Indictment No. 13664, which pertained to

NSF checks, and Counts 1 to 5, inclusive, of Indictment No. 13665, which pertained to NSF checks, and that portion of the Sixth Count of Indictment No. 13665 which pertained to NSF checks, and on Counts 2, 16 and 22 of Indictment No. 13662 which pertained to alleged fictitious deposits for the reason that the jurors could not eradicate from their minds the voluminous exhibits and testimony on the NSF checks and on matters alleged in Counts 2, 16 and 22 that were introduced by the government on the government's contention that there was a misapplication of funds by the defendants.

At the beginning of trial, consolidation of the three cases was agreed to by the defendants, and not only did they fail to oppose it, in response to an inquiry by the court, but they agreed that the indictments should be consolidated. A defendant may consent to the trial at the same time and before the same jury of different indictments charging him with separate offenses, and where he does so, by requiring the consolidation, he cannot be heard to complain of the action of the court. 53 Am.Jur. p. 68, § 64.

But even assuming that I were in error in invoking this principle of law, I meticuously and explicitly, both at the time of entering judgment of acquittal on the said counts and upon presentation of the final charge, instructed the jury to cast from their minds all evidence which related to the stricken counts. It is my considered judgment that the jurors demonstrated that degree of acumen and understanding requisite to effectively give meaning to these instructions.

### Remarks of Government Counsel Prejudicial

■ The argument is further advanced that the argument of government counsel to the jury was unfair, unwarranted and prejudicial to the defendants. The defendants admittedly did not take exception to the closing address of government counsel to the jury or any portion thereof.

Nothing is better settled than that the defendant who deems himself prejudiced by the language of counsel should promptly and publicly object and point out the language deemed improper, and then take exception if the trial judge fails to condemn it. It is too late to predicate error upon the refusal of the trial judge to grant a new trial on account of a complaint made only after verdict and upon a motion for a new trial. Smith v. United States, 9 Cir., 231 F. 25, certiorari denied 242 U.S. 636, 37 S.Ct. 19, 61 L.Ed. 539; Heald v. United States, 10 Cir., 175 F.2d 878. Indeed, defendants' counsel, who are highly learned and skilled in the law, could not plead lack of familiarity with this basic rule of trial procedure.

Be this as it may, however, I can think of no trial where the court so frequently and emphatically instructed the jury on the weight to be given remarks by counsel, and I find no exceptional circumstances in the argument which would warrant my noting an objection for the first time on motion for new trial. Heald v. United States, supra.

### There Was No Unanimity of Verdict

■ Defendants further contend that the verdict of the jury was not legal because the jurors were not unanimous in the verdict. It is argued that two weeks after the jury rendered its verdict, two jurors voluntarily contacted one of the defendants by telephone and informed said defendant that they were convinced of the innocence of the defendants when the jurors rendered their verdict as announced in Open Court, but that they had rendered the guilty verdict on the erroneous advice of fellow jurors who allegedly informed them that under the law the verdict of the majority governed the guilt or innocence of the defendants, and that the dissenting jurors were required under the law to make the verdict of the majority unanimous.

Defense counsel admits and agrees that the Court, in its final instructions,

clearly emphasized the requirement that all jurors must unanimously agree before a verdict may be rendered, and that any juror was free to observe his own conviction as his own conscience dictated. Defense counsel, themselves, do not understand how jurors of reasonable intelligence would not have understood this portion of the charge.

The general rule is that an affidavit of a juror will not be received for the purpose of impeaching his own verdict. Loney v. United States, 10 Cir., 151 F.2d 1.

The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room. McDonald v. Pless, 238 U.S. 264, 267, 268, 35 S.Ct. 783, 59 L.Ed. 1300.

I am compelled to unequivocally disapprove the practice of interviewing a juror after a trial as to his state of mind during the trial. United States ex rel. Daverse v. Hohn, 3 Cir., 198 F.2d 934.

I am well cognizant of the sense of responsibility which a member of this court is required to exercise when the liberty of accused persons is at stake. In the trial of this lengthy and involved proceeding, I have kept the rights and protective cloak with which the law surrounds the accused, uppermost in mind, and have acted with scrupulous and calculated caution in safeguarding defendants' rights.

I must conclude that any error which might have crept into the record did not affect substantial rights, and as such can be disregarded. Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A.

An appropriate Order is entered.