**UNITED STATES of America**

v.

**EL RANCHO ADOLPHUS PRODUCTS, Inc., a Corporation; Scientific Living, Inc., a Corporation; and Adolphus Hohensee, an Individual.**

**Cr. No. 12529.**

United States District Court
M. D. Pennsylvania.
April 19, 1956.

---

** Immigration and Nationality Act 1952, 8 U.S.C.A. § 1101(a) (15) (B).

J. Julius Levy, U. S. Atty., Scranton, Pa., Stephen A. Teller, Asst. U. S. Atty., Wilkes Barre, Pa., for the United States.

Horace J. Donnelly, Jr., Washington, D. C., for defendant Adolphus Hohensee.

Raymond Bialkowski, Scranton, Pa., for defendant El Rancho Adolphus Products, Inc. and Scientific Living, Inc.

WATSON, District Judge.

The defendants found guilty by verdict of a jury on seven counts[1] of misbranding of drugs in interstate commerce, 21

---

1. The Government withdrew the charges contained in counts 8 and 9 of the indictment.

U.S.C.A. § 331(b), move for arrest of judgment[2] or for a new trial.[3]

The trial covered a period of seventeen days and presents a transcript of one thousand two hundred eighteen pages.

■ The defendants contend that the indictment fails to state facts sufficient to constitute an offense against the United States. The indictment charges the defendants with causing the introduction or delivery for introduction into interstate commerce of a number of shipments of drugs which were misbranded, in the language of 21 U.S.C.A. § 352(f)(1),[4] by reason of the failure of their labeling to bear adequate directions for use. An indictment charging the elements of the offense is sufficient. United States v. Debrow, 346 U.S. 374, 74 S. Ct. 113, 98 L.Ed. 92. The indictment further specifies that the directions for use were inadequate because they did not state the diseases, purposes, or conditions for which the drugs were intended to be used. In order that directions for use be adequate, a statement of the intended uses must be included. Alberty Food Products v. United States, 9 Cir., 194 F. 2d 463. The reason for this requirement is clear. It enables a layman to attempt intelligently and safely self medication. It is not sufficient that the labeling contain a minimum of information and the use of the drug be induced by collateral representations either oral or written. Adequate labeling is best suited to obtain the beneficient purposes contemplated by the Federal Food, Drug and Cosmetic Act, viz.: broad protection of the consumer from misbranded drugs, and as a practical matter places no onus on those motivated by an honest belief that the claims made for their drug will be accomplished by its use. Since the government in the indictment substantially states the elements of the crime charged, it has charged an offense against the United States.

■ The defendants also contend that this Court is without jurisdiction of the offense charged. The offense was committed within the Middle District of Pennsylvania. The offense did not take place where the lectures were given or the literature was distributed by the defendant Hohensee, as defendants contend, but where the drugs were introduced in interstate commerce, which was within the Middle District of Pennsylvania. The tenor of the lectures and excerpts from the literature were offered into evidence to show that the products in question were drugs and to show their intended uses. There was substantial evidence from which the jury could find beyond a reasonable doubt that the articles were intended to be used as drugs when they were introduced into interstate commerce. This Court did have jurisdiction.

Defendants' motion in arrest of judgment must be denied.

■ Defendants argue that the verdict was contrary to law and the weight of the evidence. In considering the sufficiency of the evidence to sustain the verdict of the jury, this Court must take that view of the evidence which is most favorable to the government and must give to the government the benefit of all the inferences which reasonably may be drawn from the evidence. United States v. Toner, D.C., 77 F.Supp. 908. The verdict of the jury must be sustained if there is substantial evidence to support it.

A perusal of the record in the light of these principles satisfies the Court that the verdict of the jury must be upheld. It is not necessary to recount the evidence at this time. It is sufficient to say that there was ample substantial testimony supporting no other reasonable hypothesis but that of guilt of the defendants.

2. Rule 34, Arrest of Judgment, Fed.Rules Crim.Proc. 18 U.S.C.A.

3. Rule 33, New Trial, 18 U.S.C.A.

4. "§ 352. Misbranded drugs * * *
   "A drug * * * shall be deemed to be misbranded— * * *
   "(f) Unless its labeling bears (1) adequate directions for use; * * *."

■ Unless there was some error in the conduct of the trial the verdict of the jury must stand. The first error assigned by the defendants is that the Court failed to rule on and to grant defendants' motion for a bill of particulars. Defendants' motion for a bill of particulars was answered when Government's counsel supplied the requested particulars.[5] No objection was made at the time as to the sufficiency of the information given nor was any objection made at any later time until a motion for a new trial was filed.

Moreover, the indictment in each count refers to specific shipments of the products on designated dates to designated destinations. Thus, the information contained in the indictment and the information given defendants in response to their request for a bill of particulars enabled them to prepare their defense, the traditional purpose for which a bill of particulars is allowed. Norris v. United States, 5 Cir., 152 F.2d 808.

The next reason advanced by the defendants in support of their motion for a new trial is that the Court erred in granting the Government additional peremptory challenges even though counsel for the defendants stipulated that the government should have additional challenges. The defendants argue that this stipulation was entered into without the presence of the defendant Hohensee.

In spite of the cases cited by defendants to the broad effect that a defendant must be present at all proceedings after an indictment is returned, later cases hold that the right is not so sweeping. It is apparent that in every bench conference between Court and counsel, the defendant has no voice, and in effect is not present even though rulings may be made which vitally affect him. In the Third Circuit, perhaps the leading case on the subject is United States v. Johnson, 3 Cir., 1942, 129 F.2d 954, 144 A.L.R. 182, where the Court made an exhaustive analysis of precedent to determine the propriety of the exclusion of defendant for a portion of the proceedings, in that case during argument on a point of law.

■ There are occasions during the proceedings after an indictment is returned when it is not necessary that the defendant be present. Johnson v. United States, 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704, and a conference at which the number of peremptory challenges is agreed upon by stipulation is one of those occasions. A defendant in a criminal case is bound by the stipulation of his counsel, and his specific assent is needed only as to waiver of his constitutional or other "substantial" legal rights. Himmelfarb v. United States, 9 Cir., 1949, 175 F.2d 924. It has repeatedly been held that the peremptory challenges are governed by statute and not by the Constitution. United States v. Macke, 2 Cir., 1947, 159 F. 2d 673.

■ The defendants also contend that the Court erred in permitting counsel from the Food and Drug Administration to take part in the conduct of the case.

Defendants argue that Mr. Risteau of the Department of Health, Education, and Welfare was improperly permitted to take part in the trial of the case, even though during the trial, documents were submitted showing his appointment as a special assistant to the United States Attorney. A similar factual situation was held not to constitute error, Williams v. United States, 4 Cir., 1954, 218 F.2d 276.

■ The defendants also contend that the order of closing argument was improper.

Defendants cite a number of state cases to the effect that their counsel should have been entitled to present their closing argument after at least a portion of the argument of Government counsel. The practice in this District is for the complaining party to present

5. See Transcript, pages 42–44, inclusive.

its entire closing argument after argument of the defendant, unless the defendant presents no evidence, in which case the defendant argues last. Since defendants here presented evidence, they can make no complaint. In fact there was no complaint until the filing of their amended motion for new trial. It would seem apparent that, in the absence of any request for rebuttal at the trial, defendants have no standing to complain at this time. Furthermore, the order of argument is entirely within the Court's discretion. Hardie v. United States, 22 F.2d 803, certiorari denied 276 U.S. 636, 48 S.Ct. 421, 72 L.Ed. 744.

The defendants also contend that the Court erred in submitting a copy of the indictment to the jury, which copy did not include the portions relating to the prior conviction of the defendant Hohensee.

Defendants argue that the allegations of the previous conviction of the defendant Hohensee in the indictment were improper, in that the prior conviction was a matter only to be considered by the Court in imposing sentence, and that it was error to submit the indictment to the jury without the portions relating to the prior conviction. At the trial counsel argued that cases under the Prohibition Act of the 1920's were not applicable in the present situation because of a specific provision in that law for the pleading and proof of prior convictions.

The practice of alleging and proving prior convictions in order to permit the imposition of an increased penalty has been followed under a variety of statutes. The case most directly in point is United States v. Berkowitz, D.C.W.D.Mo.1942, 45 F.Supp. 564, a case under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., where the court cited exhaustive authority for the proposition that a prior conviction must be both alleged and proved. In that case, as in the present one, the contention was made that the proper method of handling the problem was to permit the first conviction to be brought to the attention of the court in an informal manner, and it was this argument that the court rejected in its ruling.

With respect to the omission of the allegations of prior conviction from the indictment sent to the jury, such allegations were alleged and proved until the Court of Appeals for the Second Circuit held in United States v. Modern Reed & Rattan Co., Inc., 2 Cir., 1947, 159 F.2d 656, certiorari denied 331 U.S. 831, 67 S.Ct. 1510, 91 L.Ed. 1845, that it was error to bring to the attention of the jury a prior conviction. While there are no reported decisions on the point, it would seem that there could be no possible prejudice to a defendant in keeping from the jury the fact of the prior conviction until after the return of a verdict on the instant trial. See Rule 52(a), Rules of Criminal Procedure.

The defendants also argue that the Court made several errors in ruling on evidence.

Defendants' objections to the evidence are based upon a number of general grounds.

The first of those relates to the admissibility of the testimony of the witnesses Barnes, Eichenauer, and Megaarden as to their conversations with the defendant Hohensee when making arrangements for the shipment of the El Rancho Adolphus products to the store of Barnes and Eichenauer. Since these conversations were for the very purpose of arranging for the goods to be shipped, they could not have taken place after the shipment as stated by defendants.

Hohensee's conversations with these witnesses were relevant to show his connection with the shipment of the misbranded drugs from Scranton to Phoenix and Denver. Other evidence, including bank records, the stipulation as to Hohensee's Presidency of Scientific Living, Inc., and his common address with the corporations all show his relationship with those corporate defendants.

Still other evidence, including the transportation records and labels on the containers of the drugs, were presented to tie in the corporations with the violative shipments. Cf. Strong, Cobb & Co., Inc., v. United States, 6 Cir., 1939, 103 F.2d 671. This evidence is all independent of any conversation which Hohensee may have had with any of the witnesses in question.

The Government showed that the content of the lectures was proved to establish the uses for which the articles were intended from the time of shipment until they were disposed of to the public.

■ Defendants also argue that the samples supplied by the witnesses Barnes and Eichenauer to food and drug inspectors were obtained in violation of Section 704 of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 374, which, when the samples were picked up in 1952, had not been amended to its present form.

The former Section 704 conferred upon the inspectors of the Food and Drug Administration the power to enter, after obtaining permission of the owner, operator, or custodian of any "establishment" where "drugs" were "held" after their introduction into interstate commerce, and to make inspections necessary for the enforcement of the Act. This right to make inspections has been held, in conjunction with Section 702(b), 21 U.S.C.A. § 372(b), to include the right to obtain samples. United States v. 75 cases, etc., Peanut Butter, 4 Cir., 1944, 146 F.2d 124, certiorari denied 325 U.S. 856, 65 S.Ct. 1183, 89 L.Ed. 1976.

■ In the present case it is undisputed that Barnes and Eichenauer willingly gave the inspectors permission to inspect and to take samples. Defendants argue, however, that a sample taken according to the above statutory procedure can only be used in evidence against the person in whose establishment it is found and who gave permission. They further contend that its use against any other person is in violation of the Fourth Amendment. It is well established, however, that a person cannot complain under the Fourth Amendment when a third person consents to a search of property belonging to the defendant but in the possession of the third person. United States v. Walker, 2 Cir., 1954, 197 F.2d 287. In the present case, the property sampled by the inspectors did not even belong to defendants.

■ It is apparent that if any other view were adopted, it would be virtually impossible to bring a criminal action under the Act. For Section 331(a), 21 U.S.C.A., makes it a violation of the Act to introduce or deliver for introduction into interstate commerce a drug that is misbranded. Since the Government must prove the existence of the violative article by sampling, and since the article will never, after its introduction into interstate commerce, be in possession of the one who has introduced it, the shipper would never be on hand to give permission to sample an article. Section 704, even before amendment, was clear enough in authorizing sampling at destination with permission obtained from the person then in possession. Here the inspectors obtained permission from the owner, operator, or custodian of the premises where the samples were obtained. As pointed out above, their action was in no way improper.

The defendants next contend that the Court erred in instructing the jury that intent is not an element of the offenses charged.

■ It is well established that it is not necessary to allege or prove guilty knowledge or intent in cases brought under the Federal Food, Drug, and Cosmetic Act. In the leading case on this point, United States v. Dotterweich, 320 U.S. 277, 285–286, 64 S.Ct. 134, 138, 88 L.Ed. 48, the Supreme Court stated:

" * * * Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have

at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless." United States v. Kaadt, 7 Cir., 171 F.2d 600.

Defendants now argue that because the offenses here charged to the defendant Hohensee are felonies, the present case is distinguishable from those cited above, which involved misdemeanors. This is not a valid distinction for in a number of cases the Supreme Court has held that other factors determine whether intent is an element of the offense. Thus, in Morissette v. United States, 342 U.S. 246, at page 259, 72 S.Ct. 240, at page 248, 96 L.Ed. 288, which contains an extensive discussion and analysis of intent in both "common law" crimes and offenses which were unknown under the common law, the Court stated:

"It was not until recently that the Court took occasion more explicitly to relate abandonment of the ingredient of intent, not merely with considerations of expediency in obtaining convictions, nor with the malum prohibitum classification of the crime, *but with the peculiar nature and quality of the offense.* We referred to ' * * * a now familiar type of legislation whereby penalties serve as effective means of regulation', and continued, 'such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger.' But we warned: 'Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting.' United States v. Dotterweich, 320 U.S. 277, 280–281, 284, 64 S.Ct. 134, 136, 88 L.Ed. 48." (Emphasis added.)

In other cases, including United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604, the United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L. Ed. 619, convictions of felonies were upheld even though no criminal intent was alleged or proved.

Defendants next argue that they were deprived of a fair trial by Government counsel's summation, principally with reference to statements that the defendant Hohensee "schemed" to violate the law. They further argue that there was no evidence to support such statements.

This contention is not borne out by the record, which shows almost without contradiction that Hohensee represented his products for a variety of serious diseases and conditions in his lectures and booklets and that the labeling of the products did not say anything about these diseases and conditions. In referring to this method of merchandising as a "scheme" to avoid the law, counsel was only paraphrasing the language of United States v. Alberty Food Products, 9 Cir., 1952, 194 F.2d 463, 464, where the court stated with respect to the requirement that the labeling of a drug should state the purposes and conditions for which it was intended:

"Adequate labeling is best suited to obtain the beneficial purposes contemplated by the Act, viz.: broad protection of the consumer from adulterated or misbranded drugs, etc., *and as a practical matter places no burden on those motivated by an honest belief that the claims made for their drug will be accomplished by its use.*" (Emphasis added.)

Other evidence shows that Hohensee was indeed attempting to avoid the provisions of the law. Mrs. Barnes testified that Hohensee took the invoice and shipping records for his products from her because the Food and Drug Administration could not maintain any action

against him without records of interstate shipment.

It is also apparent from the record that Hohensee was being less than candid when he would state in one breath that he did not diagnose or prescribe for disease, and then in the very next proceed to diagnose a serious disease and recommend one of his "diets" for its treatment. The testimony of Mr. Kimlel and Miss Stroessner is full of instances of this type of evasive conduct, and defendants' evidence, in particular the testimony of Mrs. Anderson, corroborates that of the Government.

■ These facts in themselves form a sufficient basis from which it could be inferred that the defendant Hohensee knew that he was violating the law and that he was taking whatever steps he could to forestall prosecution. Argument based upon the evidence and inferences from the evidence is always proper. Eastman v. United States, 3 Cir., 1946, 153 F.2d 80, certiorari denied 328 U.S. 852, 66 S.Ct. 1342, 90 L.Ed. 1625.

■ However, even if there was no evidence in the record to support the statement with respect to Hohensee's purpose to violate the law, the Court on two occasions, first in its general charge, and again when defendants first objected to Mr. Teller's remarks, instructed the jury to disregard all comments of counsel and to decide the case on the evidence. Czarnecki v. United States, 3 Cir., 1938, 95 F.2d 32; Chadwick v. United States, 5 Cir., 1951, 117 F.2d 902, certiorari denied 313 U.S. 585, 61 S.Ct. 1109, 85 L.Ed. 1541. It is only rarely that the court should interrupt argument of counsel in the absence of objection, and, as pointed out above, the record provides ample basis for the arguments.

Defendants' next argument is that the jury failed to consider all of the evidence, and was unduly influenced by allegedly improper argument of Government counsel. They also request the Court to grant permission to take testimony of jurors for the purpose of determining what effect these allegedly erroneous statements may have had upon them.

Mattox v. United States, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917, is cited by defendants for the proposition that jurors may be interrogated for the purpose of determining when an improper influence has been exerted on them. Actually the case holds that the jury may be questioned as to whether they saw a newspaper account published while they were deliberating, but the case specifically denies counsel the right to question jurors as to the effect which the newspaper account had on their minds.

■ The rule in the Mattox case was recently and forcefully stated by Chief Judge Gourley of the Western District of Pennsylvania in United States v. Nystrom, D.C.1953, 116 F.Supp. 771, 777:

"I am compelled to unequivocally disapprove the practice of interviewing a juror after a trial as to his state of mind during the trial. United States ex rel. Daverse v. Hohn, 3 Cir., 198 F.2d 934."

The remaining reasons assigned by defendants in support of their motions are entirely without merit and require no discussion.

It is the conclusion of this Court that the record shows no error in the trial that was prejudicial to the defendants. The verdicts were not contrary to the law. Defendants received a fair trial and the verdicts were supported by substantial evidence. Defendants' motion in arrest of judgment will be denied. Defendants have failed to advance any valid reason why a new trial should be granted and defendants' motion for a new trial will be denied.

An appropriate order will be filed herewith.