2024 IL App (1st) 221245-U

SIXTH DIVISION
January 26, 2024

No. 1-22-1245

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| XINXIN WANG et al., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County |
| | ) | |
| v. | ) | No. 2021 L 10030 |
| | ) | |
| JIN HUI GUO et al., | ) | The Honorable |
| | ) | Mary Colleen Roberts, |
| Defendants-Appellees. | ) | Judge, presiding. |

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice C.A. Walker concurred in the judgment.

**ORDER**

*Held*: We affirm the circuit court decision to dismiss the plaintiffs' complaint based on the provision in the loan agreement selecting China as the forum for the resolution of any disputes.

¶ 1                                  I. BACKGROUND

¶ 2        This appeal arises out of the alleged breach of a loan agreement to finance a real estate development project in China. We begin, as we typically do, by summarizing the allegations of the complaint. However, our task is difficult because the allegations in the complaint are in many respects incomprehensible and appear at times counterintuitive if the purpose of the agreement

was to loan money or invest in a real estate project. The gist of the complaint is that the parties agreed that the plaintiff lender would loan the defendant borrower millions of dollars and the defendant borrower was to immediately repay the plaintiff. The plaintiff sent the defendant over $13 million by wire transfers but the defendant only repaid $5.4 million. In an affidavit supporting plaintiffs' motion for service by special order of court, plaintiffs' counsel avers that defendants Jinhui Guo and Ashley Liu were being investigated for money laundering. We do not know whether the parties were engaged in money laundering here but raise this point because of the peculiar allegations of the parties' dealings and the fundamental principle that courts do not assist those seeking to enforce illegal contracts. *Merchandise Nat. Bank of Chicago v. Kolber*, 50 Ill. App. 3d 365, 369-370 (1977) ("Where enforcement of an illegal contract is sought, the courts will aid neither party but will leave them where they have placed themselves[.]"); see also, *Galan v. Jackson*, No. B184916, 2006 WL 648852 (Cal. Ct. App. Mar. 16, 2006) (court declined to rescind an illegal money laundering contract); *Martinez v. Guajardo*, No. 13-20-00165-CV, 2022 WL 400837 (Tex. App. Feb. 10, 2022) (court declined to enforce an agreement to launder drug money).

¶ 3    On October 10, 2021, plaintiffs XinXin Wang and Primatrix Investment, Inc., filed a six-count complaint against defendants Jinhui Guo, Xin Li, Xiangyu Zhou, Ashley Liu, and three companies owned by Zhou and Li (who are married to each other and live in Cook County, Illinois): RM Material, LLC, Cabinets Depot, LLC, and Rimei International, Inc. Count I alleges breach of contract against Guo and counts II and III allege breach of contract against Liu. Counts IV and V allege fraud and conversion, respectively, against Guo, Liu, Zhou, and Li. Count VI alleges a civil conspiracy against all defendants.

¶ 4    We summarize the allegations as best we can. In March 2019, plaintiff Wang, a Chinese citizen who resides in China, and his "attorney-in-fact" and agent Ming Dou, attended a real estate

2

developer event in Chicago where they met defendant Li. Wang told Li that he was interested in real estate development opportunities. Li introduced Wang and Dou to a third party who was developing real estate in Glenview, Illinois. At Li's urging, Wang invested in that project.

¶ 5    On August 1, 2019, Zhou contacted Dou and told him that Guo, a resident of China, was seeking funding for a real estate development project in China and that "Guo had $3 Million dollars that he can wire to Wang's bank accounts." It is unclear from the complaint why Guo, who was seeking funding for a real estate development project in China, would wire $3 million to Wang.

¶ 6    On August 2, 2019, Zhou sent a text message to Dou advising him that Guo had obtained funding for his project in China through other investors and now only needed $720,000. That same day, Zhou sent Dou the payee and bank account information over the WeChat messaging application. On August 3, 2019, Wang transferred by wire 5,000,000 RMB (the currency of China), the equivalent of $720,000, to the two Chinese bank accounts designated by Guo.

¶ 7    Dou also provided Zhou with Wang's bank account information into which Guo was to wire transfer $720,000. Zhou advised Dou at 11:27 pm on August 2, 2019, that the transfer of the $720,000 to Wang should be completed before midnight Chicago time.  As of August 4, 2019, however, Wang had not received the funds from Guo, and Dou so advised Zhou. Zhou assured Dou that the "money is safe. His relatives (Ashley Liu) in the United States are next to me now."

¶ 8    On August 5, 2019, Zhou told Dou that Guo was willing to take additional funding from Wang and provided Dou the bank account information for defendants RM Materials, LLC and Cabinet Depot, LLC, which Zhou represented were companies she owned. Zhou told Dou that "each of her company account would receive $2.5 Million Dollar USD for Wang; Dou's two company bank accounts would receive $500,000 dollars USD each; and Wang's three bank accounts would receive a total of $8 million Dollars USD." Later that day, Zhou told Dou that she

3

had "already told [Guo] and [Liu] that [Wang] will want the whole 14 million USD." Zhou then provided Dou the bank account information for four individuals, including Guo; Liu's mother, Zixia Zhao; and two other individuals, Bo Li and Dong Xu. Zhou said that Guo would receive 10 million RMB, Xu would receive 20 million RMB, and Zhao would receive the remaining amount.

¶ 9    On August 6, 2019, Dou told Zhao that Wang wanted "all of the $14 million USD" and gave Zhao information for seven U.S. bank accounts where the funds could be transferred by wire. Later that day, Zhou sent Dou a text message, stating, "You need to transfer the RMB as soon as the bank opens at 9:00 am. Otherwise there will be the other competitors who also need USD, once then made the transfer first, Guo and Liu will have the deal with other people." Zhou then left Dou a voicemail, stating, "If we can just send the first wire transfer receipt of RMB to him, then it will show to Guo that we are committed to do the deal, he will not go to the other guys." Zhou called Dou shortly thereafter, and said, "I just called. Your friend need to transfer 20 million RMB to each of the four people. Guo and Liu will confirm the last account, and will transfer the balance left into the 3rd account." Shortly thereafter, Zhou told Dou, "You just transferred the first, once you have the bank receipt, pls send to me as soon as possible." Two hours later, Zhou texted Dou, stating, "Hurry up, Please!" and "The competitors are using the wire transfer, they are faster than us."

¶ 10    Dou then sent Zhou pictures of four receipts showing the transfer of 20 million RMB to each of Guo, Xu, Li, and Zhao.

¶ 11    When Dou told Zhou that Wang was getting nervous, Zhou replied, "You don't have to worry about security of the fund, tell [Wang] that we can be guarantee." Zhou also told Dou, "If you guys are really not comfortable, I can freeze the same amount of fund in my company's

account and provide the guarantee to you. When his money finally received, we defreeze the fund, then."

¶ 12    On August 7, 2019, when Dou expressed concern that Guo had not wired money to Wang, Zhou replied, "Yesterday they transferred 6 million USD in total. They will finish all of the other amount tomorrow. The wire transfer receipts are all ready. Because they are using the same company and that company already transferred 2.4 Million USD." Zhou also stated, "I will use my company's fund to provide proof of fund today. So your friend will not be worried." Zhou also stated, "Yesterday there are 6,427,000 USD wired; and Wang wired 80 million RMB, equals to 11,222,715 USD. The USD not wired yet is: 11,222,715-6,427,000=$4,795,715."

¶ 13    On August 12, 2019, when Dou told Zhou that the $2.1 million had not arrived in the Primatrix Investment, Inc. (Primatrix) account, Zhou responded, "I will call the BOA customer service number of our company accounts, to see whether it is pending or not." When the $2.1 million did not arrive the next day, Zhou told Dou, "Guo and Ashley Liu will arrange someone to go to the bank. If there is still nothing showed up, they will see what to do at the bank."

¶ 14    Zhou stated that, as of August 14, 2019, the "current status is: previous unpaid balance to Mr. Wang is $6,322,732, 8/14, $4,200,000 was wired, still 2,122,732 left; on 8/15, Wang will wire transfer 27,000,000 RMB according to the exchange rate of USD: RMB=1:703.85; it will be additional $3,836,045. On 8/15, they should wire total $5,958,777 to Wang's US account."

¶ 15    On August 19, 2019, Zhou told Dou, "Singapore just gave the latest confirmation. On Tuesday morning, Singapore time, the bank will release the 3 wires together (to three business accounts), they asked us to check on Tuesday U.S. time." On August 20, 2019, when Dou asked Zhou for an update on the transfers, Zhou responded by asking Dou for his identification, stating, "The bank is asking for company accounts' holder IDs. Once we sent the IDs to the bank, the wires

will be processed." Dou then sent Zhou a copy of his driver's license, to which Zhou responded, "Now everything is OK. All approved."

¶ 16    No funds were ever transferred from the bank in Singapore. Zhou continued to mislead Dou by falsely stating that she had been advised by her bank, Bank of America, that wire transfers from Singapore would appear on her company's bank account within 24 to 48 hours. Zhou blamed the Chinese government for the delay in the wire transfers from Singapore.

¶ 17    On August 29, 2019, Zhou offered to have her husband, Li, send Dou a screenshot of the wire transfer of funds into Zhou and Li's company bank account but he never did. On August 30, 2019, Zhou sent Dou a screenshot (an image of which is embedded in the complaint) purporting to be that of her company bank account, stating, "This wire came in yesterday. Still pending now." When Dou asked if the $2.1 million transfer was for Wang, Zhou replied, "Yes, after so many days we just have a pending." Dou continued to ask Zhou if the $2.1 million wire transfer had cleared, and Zhou continued to represent that it was still pending.  Li subsequently admitted that the $2.1 million "was never received by anyone in the United States and that the screenshot was a fake, photoshopped picture."

¶ 18    In total, Wang loaned Guo $13,022,714 but was only repaid $5,422,260.  The balance Wang is owed from Guo is $7,600,454.

¶ 19    On October 24, 2019, Liu executed a personal guarantee agreeing to pay the remaining balance of 53,461,850 RMB by October 25, 2019, if Guo failed to repay Wang. On November 8, 2019, Liu executed a "promissory note" wherein she agreed to pay the remaining amount owed Wang, plus interest and penalties by November 22, 2019, in the event that Guo failed to repay Wang. That same day, Guo executed a loan agreement promising to pay Primatrix the remaining balance of RMB 53,461,850 owed to Wang plus interest by November 15, 2019.

¶ 20 The loan agreement identifies Primatrix as the "lender" and a "wholly-owned subsidiary of a Chinese company located in Illinois, USA." According to a power of attorney in the record, Wang is the "director and majority shareholder" of Primatrix, although the complaint does not allege any facts to that effect. Moreover, although the complaint alleges that money Duo owed Wang would be paid to Primatrix, the complaint does not allege that Primatrix received any payment.

¶ 21 When neither Guo nor Liu paid the amount due to Wang or Primatrix, Liu requested and received an extension of her personal guarantee to February 14, 2020.

¶ 22 On October 10, 2021, plaintiffs filed their complaint against defendants for breach of contract, fraud, conversion and civil conspiracy. On April 8, 2022, Zhou, Li, and the company defendants (collectively "Moving Defendants") filed a combined motion to dismiss counts IV, V, and VI pursuant to 735 ILCS 5/2-619.1 (West 2020). On May 25, 2022, the circuit court entered default judgment against Guo for $8,779,448.69 and against Liu for $8,279,467.30 on counts I, II, and III, and they are not parties to this appeal.

¶ 23 The Moving Defendants raised several defenses in their motion to dismiss. First, without citing any authority, they argued that Wang could not proceed *in absentia* with Dou acting as his attorney-in-fact because Wang is unwilling to submit himself to the jurisdiction of the court, and that Primatrix lacked legal capacity to sue because it was involuntarily dissolved. Plaintiffs responded that the Moving Defendants waived these arguments by failing to cite any legal authority. They alternatively responded that the individual plaintiffs may prosecute a case via an attorney-in-fact and provided a certificate from the Illinois Secretary of State indicating that Primatrix was in good standing.

¶ 24 Next, the Moving Defendants argued that the complaint must be dismissed pursuant to the forum selection and choice of law clauses in the loan agreement between Primatrix and Guo, which states, respectively, that a "dispute may be filed in the people's court with jurisdiction at the place of execution of this Contract (Xicheng District, Beijing)," and that "the laws of the People's Republic of China[]" will govern the dispute. In support, the Moving Defendants primarily relied on *Solargenix Energy, LLC v. Acciona, S.A.*, 2014 IL App (1st) 123403, to argue that even though they are not parties to the loan agreement, they may still enforce the forum-selection clause therein and that the forum selection clause also applies to the non-contractual claims against them. The plaintiffs responded by arguing that the Moving Defendants lack "standing" to enforce a contract that is only between Primatrix and Guo.

¶ 25 Next, the Moving Defendants argued that because the plaintiffs, after learning of the defendants' fraud, affirmed the underlying oral agreement by entering into the written loan agreement, they could not sustain a fraud claim. In response, the plaintiffs argued that questions of material fact remained, and that any alleged contractual affirmations did not involve the plaintiffs where the written contracts were only between Primatrix, Liu, and Guo.

¶ 26 Finally, the Moving Defendants argued that the allegations in the complaint were insufficient to support the conversion and civil conspiracy claims (counts V and VI).

¶ 27 On July 22, 2023, the circuit court issued an order granting the Moving Defendants' motion to dismiss the complaint in its entirety "due to jurisdictional defect []" and did not address any of the other grounds for dismissal. The circuit court reasoned that "[Plaintiffs] fail in meeting their burden to show that non-signatories could not foresee being bound by the loan agreement because [plaintiffs] allege that all [defendants] were in conspiracy to defraud [plaintiffs] through the loan agreement." In support of its conclusion to enforce the forum selection clause against the plaintiffs,

the circuit court stated that the "[defendants] introduced [plaintiff] Wang to Guo to foster the loan agreement in question[.]"

¶ 28    On August 17, 2022, the plaintiffs timely filed this appeal.

¶ 29                                    II. ANALYSIS

¶ 30    The circuit court dismissed plaintiffs' complaint under section 2-619 of the Civil Practice Law (735 ILCS 5/2-619 (West 2020)) based on the clause in the loan agreement between Primatrix and Guo selecting China as the forum for the resolution of any disputes. Dismissal under section 2-619 is appropriate when an affirmative matter bars the plaintiff's claims. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 120 (2008). This court has considered the existence of an enforceable forum selection clause in a contract as an affirmative matter that may warrant dismissal under section 2-619. See, *e.g., Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 38; *Brandt v. MillerCoors, LLC*, 2013 IL App (1st) 120431, ¶¶ 12, 23; *Dace International, Inc. v. Apple Computer, Inc.*, 275 Ill. App. 3d 234, 237 (1995). The defendant bears the burden of proving any affirmative defense it relies on. *Wright v. Pucinski*, 352 Ill. App. 3d 769, 772 (1st Dist. 2004). We review the circuit court's section 2-619 dismissal *de novo. Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 31    Before turning to the merits, we must address four threshold matters. First, although the court based its dismissal on a "jurisdictional defect," this appeal is not about the circuit court's jurisdiction over the defendants or subject matter. A contract selecting another forum neither deprives the court of subject-matter jurisdiction nor personal jurisdiction. See *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 38. The circuit court has subject-matter jurisdiction to determine both the scope and enforceability of the forum selection clause. *Id.* The circuit court's determination of the scope and enforceability of the forum selection clause only resolves the issue

9

of where the plaintiff may litigate the merits of his claim. *Wright*, 352 Ill. App. 3d at 772. In addition, a decision enforcing a forum-selection clause has no bearing on the question of whether there are any facts which the plaintiff can prove that will entitle him to recover, *i.e.* the merits of his claim. *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶ 23. We further note that the Moving Defendants have never disputed the circuit court's jurisdiction over them.

¶ 32    Second, the loan agreement states that "the dispute *may* be filed in the people's court with jurisdiction at the place of execution of this Contract (Xicheng District, Beijing)," suggesting that the Chinese dispute resolution forum is optional (emphasis added). However, the plaintiffs do not advance this argument on appeal, so we consider the issue forfeited (*In re H.B.,* 2022 IL App (2d) 210404, ¶ 41 ("A party forfeits an argument when he or she fails to adequately develop it")) and assume, without deciding, that the word "may" means "shall" in this instance.

¶ 33    Third, although the loan agreement provides that it shall be governed by Chinese law, the parties have only cited and argued Illinois and federal case law. Accordingly, we consider the issue of governing law waived and assume, without deciding, that Illinois and federal case law apply to the issues raised in this appeal. See *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 438 (7th Cir. 2012) ("Notice that the clause is a choice of law provision as well as a forum selection clause, implying that the law governing the enforceability of the forum selection clause is Mexican law, since the clause is, obviously, a term in the contract. But neither side has asked either the district judge or us to apply Mexican law to the clause; their debate over its enforceability is framed entirely as a dispute about American law, and so the issue of the applicable law has been waived.")

¶ 34    Fourth, the plaintiffs argue that the court improperly shifted the burden to them to prove that the forum selection clause does not require the dismissal of the complaint. We agree with the

plaintiffs that the Moving Defendants bear the burden of proving that they may enforce the forum selection clause against the plaintiffs. See *Eckhardt v. The Idea Factory*, 2021 IL App (1st) 210813, ¶ 38. Imposing the burden on the Moving Defendants is consistent with our approach to claims for breach of contract by an alleged third-party beneficiary, where we have held that the party seeking to enforce a contract to which it is not a party bears the burden of proof. See *Martis v. Grinnel Mut. Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). Thus, the circuit court erred in imposing the burden on the plaintiffs to prove that the forum selection clause may not be invoked by the Moving Defendants. Accordingly, because the Moving Defendants have not submitted any affidavits or other evidence, the only way they can meet their burden is if the complaint itself alleges facts to show they may enforce the forum selection clause in their favor. See *Direct Auto Insurance Company v. Bahena*, 2019 IL App (1st) 172918, ¶ 46 (The appellate court may affirm on any basis appearing on the record.) Indeed, the Moving Defendants concede as much, arguing that trial court's error is a "red herring" because the complaint itself alleges facts to show that the Moving Defendants can enforce the forum selection clause against the plaintiffs.

¶ 35    Turning to the merits, the plaintiffs argue that the Moving Defendants may not enforce the forum selection clause in the loan agreement between Primatrix and Guo because the Moving Defendants are not parties to that agreement.  However, "a nonparty to a contract containing a forum selection clause can nonetheless be bound by the clause where the non-signatory is 'closely related to the dispute such that it becomes foreseeable that it will be bound." *Solargenix*, 2014 IL App (1st) 123403, ¶ 36 (citing *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir. 1993) (Internal quotation marks omitted)). "[A] range of transaction participants, parties and nonparties, should *benefit from* and be subject to forum selection clauses." *Id.* ¶ 37 (emphasis added) (citing *Manetti-Farrow, Inc. v. Gucci America*, *Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir. 1988)). While a

third-party beneficiary satisfies the closely related and foreseeability requirements, the nonparty does not have to be a third-party beneficiary for the forum selection clause to apply. *Id.*

¶ 36 Plaintiffs contend that the Moving Defendants failed to establish that they were "closely related" to the dispute or that it was "foreseeable" that they would be bound by the forum selection clause. In response, the Moving Defendants argue that because the complaint establishes that all claims against them are based on the original oral agreement between Wang and Guo and that the Moving Defendants conspired with Guo to "induce the loan," the Moving Defendants are closely related to the dispute, and it was foreseeable that they would be bound by (and in this case may invoke) the forum selection clause. Courts have found that parties are "closely related" and that it is "foreseeable" that one will be bound by a forum selection clause when there is a corporate relationship between the signatories and non-signatories or where the doctrine of mutuality applies. See *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436, 442 (7th Cir. 2012).

¶ 37 The mutuality doctrine provides that "if a signatory can enforce the forum selection clause against a non-signatory, then the non-signatory should be allowed to do the same." *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1054 (N.D. Ill. 2015). In *Adams*, the court found that "an alleged conspirator can invoke a forum selection clause contained in a contract, signed by his alleged co-conspirator, that created or advanced the conspiracy." *Adams*, 702 F.3d at 442. There, the plaintiffs alleged that the non-signatory company defendant conspired with the defendant parent company of the signatory, which was not a defendant, to defraud the plaintiffs. *Id.* at 442-43. Although the court reasoned that the mutuality doctrine applied in that case because the complaint alleged that the signatory was the agent of a secret principal *and* a co-conspirator (*Id.*), application of the mutuality doctrine does not require allegations of a secret principal. See *Stifel, Nicolous & Co., Inc. v. Lac Du Flambeau Band of Lake Superior Chippewa Indians*, 807 F. 3d

184, 213 (7th Cir. 2015) ("Nothing in our case law *** suggests that 'mutuality' is limited to [secret principals and co-conspirators]."). Other courts have applied the mutuality doctrine to allegations of conspiracy alone. See *Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329 n.7 (6th Cir. 2019) (holding that non-signatory defendants alleged to be co-conspirators with signatory defendant were entitled to enforce a forum selection clause and finding that it "need not decide whether all Defendants indeed were in conspiracy ***; it is enough that Plaintiffs' complaint alleges that this was the case."); *Pomerantz v. Hard Rock Café Franchise Group, LLC*, No. 18 CV 5470, 2020 WL 6447306 (N.D. Ill. Nov. 3, 2020) (signatory and non-signatory were co-conspirators according to the allegations in the complaint and therefore non-signatory co-conspirator can enforce a forum selection clause).

¶ 38    We hold that the circuit court correctly dismissed the complaint under the forum selection clause based on the mutuality doctrine and the allegations in the plaintiffs' complaint.  We start with two obvious propositions. First, Guo, as one of the parties to the loan agreement, can enforce the forum selection clause and so can Liu who executed a "guarantee" that expressly adopted the loan agreement. Second, Primatrix, who is also party to the loan agreement, and Wang, who is Primatrix's president, can enforce the forum selection clause. See *Solargenix* 2014 IL App (1st) 123403, ¶¶ 4, 47-48 (non-signatories were bound by forum selection clause because their executive committee "discussed and reviewed the investment" and their senior officials negotiated the joint agreement, and their CEO was "personally involved in the decision to invest *** [and] approved the initial decision to enter the joint venture[.]") *Id.* at 47-48.

¶ 39    The allegations here make clear that the amount due under the loan agreement is the same amount that the Moving Defendants, Guo and Liu obtained from Wang and Primatrix by fraud. The loan agreement states that money was loaned, the money was not paid back, and the amount

due is 53,461,850 RMB, the same amount allegedly owed to Wang and Primatrix before they signed the loan agreement. These funds were sent based on the communications, actions, and representations between and among the Moving Defendants, Guo, Liu, Dou, and Wang. Guo, a party to the loan agreement, is alleged to have conspired with the Moving Defendants to defraud the plaintiffs. Because the complaint alleges that the Moving Defendants conspired with Guo to defraud Wang and Primatrix of the same funds to be repaid under the loan agreement, Wang and Primatrix could have enforced the forum selection clause against the Moving Defendants and brought suit in China against them if they so elected. *See Adams* 702 F.3d at 443 (because a non-signatory defendant is bound by a forum selection clause where the plaintiff alleges that the signatory defendant conspired with the non-signatory defendant, "it follows that [non-signatory defendant] can hold the plaintiffs to the clause in the opposite situation.") Therefore, under the principle of mutuality, the Moving Defendants too can enforce the forum selection clause against Wang and Primatrix. Although the only defendant that is a party to the loan agreement is Guo, the allegations make plain that the loan agreement would not have been signed had the Moving Defendants and Liu not conspired with Guo to defraud Wang and Primatrix. Accordingly, we hold that, even though they are not parties to the loan agreement, the Moving Defendants may invoke the forum selection clause in the loan agreement against the plaintiffs.

¶ 40 Next, we address whether the forum selection clause applies to the plaintiffs' tort claims for fraud (Count IV), conversion (Count V), and conspiracy (count VI). The forum selection clause applies to "[a]ny dispute arising from the performance of this Contract[.]" Thus, we must determine whether the tort claims arise from the performance of this contract. See *Eckhardt v. Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 24. There are three approaches to resolve whether tort claims arise from a specific contract. *Id.* The first approach is to determine whether the tort claims

ultimately depend on a contractual relationship between the parties. *Id.* The second approach is to determine whether resolution of the claims would arguably require interpretation of the contract. *Id.* The third approach, which we have determined is the best approach, is to determine whether the claims involve the same operative facts as the breach of contract claim. *Id.* ¶ 25 ("As our guiding principle is to honor the reasonable expectations of the parties, we find that the third approach best effectuates that principle when parties have agreed upon a generic forum selection clause, particularly for a party to whom the clause adhered. If a party should reasonably expect the clause to apply to breach of contract claims, they should also reasonably expect the clause to apply when the same operative facts of a noncontractual claim would be cognizable as a breach of the contract."). A tort claim involves the same operative facts as a parallel claim for breach of contract when "[t]he same exact facts surrounding [the plaintiff's] tort claims would also give rise to a breach of contract claim." *Id*. ¶ 26. As we explain above, the loan agreement between Primatrix and Guo does nothing more than reduce to writing an oral agreement to loan money with the promise that the money will be repaid and the tort claims are intricately dependent on what occurred prior to the formation of the loan agreement. We examine each tort claim individually.

¶ 41 We begin by noting that the contract and tort claims brought by Wang and Primatrix rely on the same allegations. Every tort count realleges and incorporates the allegations about the loan agreement, which states:

> "[T]he lender lent to the borrower loans totaling RMB 92,083, 706 *** on August 7, 2019 and September 11, 2019. The Agreed repayment date was October 25, 2019. As at (sic) October 25, there was still a total of RMB 53, 461,850 that has not yet been repaid. With the written consent of the Lender, it was agreed to extend full repayment date of the outstanding amount to November 15, 2019."

¶ 42     On October 24, 2019, Liu signed a handwritten personal guarantee to pay any amount that Guo did not repay by October 25, 2019, which corresponds to the original repayment deadline in the loan agreement. Count IV for fraud alleges that Guo, Liu, Li, and Zhou all made false statements of material fact to induce Wang to wire $13 million—the same $13 million under the loan agreement—to Guo, Liu, Li, and Zhou. Thus, while the fraud claim is additionally based on a false statement of material fact, both the contract and fraud claims are based on the same factual allegation that Guo and Liu did not repay the money that was owed the plaintiffs. Similarly, Count V for conversion is based on the same operative facts as the breach of contract claim because it alleges that Guo, Li, Liu, and Zhou retained the money that Wang wired and that Primatrix is owed under the loan agreement, and that instead of repaying the money, Guo, Li, Liu, and Zhou have retained the money. Finally, Count VI for civil conspiracy realleges the same operative facts as the breach of contract claim but also alleges that the Moving Defendants along with Guo and Liu conspired to deprive Wang and Primatrix of the same funds that are the subject of the contract claim. Because the tort counts allege the same operative facts as the breach of contract count, we conclude that the forum selection clause applies to the claims for fraud (Count IV), conversion (Count V), and conspiracy (count VI).

¶ 43                                   III. CONCLUSION

¶ 44     For the foregoing reasons, we conclude that the circuit court did not err in dismissing the plaintiffs' complaint under the forum selection clause in the loan agreement between Primatrix and Guo.

¶ 45     Affirmed.