Sine Rasmussen, Appellee, v. Oliver L. Mitchell and Iver O. Eide, Appellants.

Gen. No. 42,877.

Heard in the first division of this court for the first district at the October term, 1943. Opinion filed February 28, 1944. Rehearing denied March 14, 1944.

Victor C. Rehm, of Chicago, for appellants.

Cloyes & Cavender, of Chicago, for appellee.

Mr. Justice Niemeyer delivered the opinion of the court.

Defendants appeal from a decree canceling a second mortgage note and trust deed given by plaintiff to Oliver L. Mitchell, the principal defendant, as part of a transaction whereby the plaintiff refunded a prior foreclosed first mortgage held by Mitchell with the proceeds of a Home Owners' Loan Corporation mort-

gage. The decree further directed that defendant Eide, trustee in the trust deed canceled, execute and deliver a release of the trust deed and that defendants pay $138.25, being one half of the master's fees taxed in the case. Plaintiff cross-appeals, charging that the trial court erred in not decreeing the payment to her of $307.88, being principal and interest paid to Mitchell upon the second trust deed, and in taxing against her one half of the master's fees.

In 1925 plaintiff and her husband, deceased prior to the institution of suit, purchased the premises involved, subject to a trust deed securing principal notes for $10,000; in August 1933, Mitchell, as owner and holder of the notes, instituted foreclosure proceedings; in the early part of 1934 plaintiff and her husband began negotiations for a loan with the H. O. L. C., and on May 2 Mitchell executed a mortgagee's consent to take bonds, wherein it was recited, "undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $6,365 face value of the bonds of Home Owners' Loan Corporation, . . . and thereupon to release all the claim of the undersigned against said property." The next day this consent was forwarded to the H. O. L. C. by Mitchell's attorney, with a letter stating, "I am enclosing herewith consent of Oliver L. Mitchell . . . to take a reduced amount of bonds as per your distribution schedule. The home owner is going to give my client a second mortgage for the difference." On May 11 the H. O. L. C. wrote Mitchell's attorney, saying, "The solution which you suggest for completion of this file, namely that your client accept a second mortgage for the difference, is satisfactory if the terms of such additional mortgage pass the examination of this corporation. Of course, it would defeat your own purpose if the owner would undertake a subsequent mortgage large enough to embarrass him in paying us. In each

similar case we must now require that a copy of any such mortgage be submitted to us before we can grant the loan.'' At this time the total amount due Mitchell, including costs and attorney's fees in the foreclosure proceeding, was $9,436.60. The property involved was improved by a building which had originally been a 3-flat building but which had been divided into five 1-room and nine 2-room furnished units which plaintiff and her husband rented. An H. O. L. C. appraisal obtained in February 1934 fixed the value of the property at $9,784. May 18, 1934 plaintiff and her attorney and Mitchell and his attorney submitted to an employee in the H. O. L. C. offices the trust deed sought to be canceled and the note secured thereby; this note was for $2,500, payable $50 on June 21, 1934 and $50 on the 21st day of each month for 34 months, and a final payment of $750 on May 21, 1937, with interest at 6 per cent per annum. The evidence as to what took place in the H. O. L. C. offices is unsatisfactory. There is no record or notation in the files of the H. O. L. C. showing approval of this trust deed. Under date of June 8, 1934 plaintiff and her husband executed and delivered to the H. O. L. C. a first mortgage on the premises involved, securing their principal promissory note of that date for $7,825, payable $61.89 each month. This mortgage was recorded June 20, 1934; about June 26, 1934 the H. O. L. C. delivered to Mitchell bonds and cash aggregating $6,365; the Mitchell mortgage was recorded August 1, 1934, and before the present suit was started plaintiff had paid $225 on the principal and $82.88 interest upon it.

Plaintiff contends that the Mitchell mortgage, and note secured thereby, are in contravention of Mitchell's consent to take bonds in full settlement of his claim, and contrary to H. O. L. C. regulations which forbid the taking of a second mortgage for more than the difference between its appraisal and the amount of its first mortgage or the taking of a second mort-

gage in terms that would make the mortgagor's payments to the H. O. L. C. a hardship, and that the Mitchell mortgage was not approved by the H. O. L. C. Defendants contend that the regulations relied upon by plaintiff were not in force and effect at the time the Mitchell mortgage and note were delivered and accepted, that the mortgage and note were executed and delivered to Mitchell with the knowledge and consent of the H. O. L. C., and that if any wrong was committed, plaintiff was in *pari delicto* with defendants and not entitled to relief in a court of equity.

Similar cases have been frequently before the courts. The Home Owners' Loan Act of 1933 was an emergency measure the purpose and intent of which was to free the owner's home property from an oppressive mortgage or other liens, and to reduce and settle his other obligations so as to give him a chance to become rehabilitated. To this end the corporation required the consent of the mortgagee to accept a certain sum in full settlement of his lien against the home property, or permitted the taking of a second mortgage for additional sums where the amount of the second mortgage and the mortgage to the corporation did not exceed its appraised value of the property and where the terms and conditions of payment of the second mortgage did not impose an oppressive burden on the home owner and render completion of payments under both mortgages unlikely. Second mortgages, taken without the knowledge and consent of the corporation, are generally held void as contrary to public policy. *Bealkowski v. Powers,* 310 Ill. App. 662; *Brown v. Sears, Roebuck & Co.,* 311 Ill. App. 490; *Meek v. Wilson,* 283 Mich. 679; *McAllister v. Drapeau,* 14 Cal. (2d) 102, 92 P. (2d) 911.

We pass as without merit the contention of defendants that the rules and regulations received in evidence, prohibiting the taking of a second mortgage or trust deed for more than the difference between the

H. O. L. C., appraisal and the amount of its first mortgage, or the taking of such second mortgage or trust deed when its terms would make the mortgagor's payments to the H. O. L. C. a hardship, are invalid. The transactions before us occurred when the corporation was in its formative period. The act creating it (12 U. S. C. A., § 1463) provided that the board of the Federal Home Loan Bank was authorized and directed to create the H. O. L. C., which shall be under the direction of the board and operated by it under such bylaws, rules and regulations as it may prescribe, and that the members of the board shall constitute the board of directors of the H. O. L. C. The rules and regulations here involved were promulgated by the members of the board of the Federal Home Loan Bank, as directors of the H. O. L. C., and several months after the transactions involved here were completed the rules and regulations were ratified by the same persons acting as the board of the bank. Defendants contend that as directors of the H. O. L. C. these persons had no authority to set up rules and regulations for its conduct. The business of the H. O. L. C. was conducted under these rules and regulations, and through pretended compliance with them defendants obtained $6,365 in bonds and cash, which they still retain. They cannot now be heard in an attack on their validity.

In 1934, when the Mitchell mortgage was given, plaintiff was 67 years of age; her husband, a bricklayer, had been injured in 1918 in the course of his employment and wholly incapacitated for work; plaintiff and her husband had no income other than that derived from the renting of the rooms in the building secured by the mortgage, and had no other property; none of the units had a private bath or toilet; the total rental received at the time of the trial would be $260 a month if all the units were rented; this was lower than the rentals of the best year, 1934, when during the World's Fair, although the steady renting was poor,

units not occupied by tenants were let to transients; in 1933 the income was so small that plaintiff was unable to pay her bills. By the new arrangement of refinancing, through the H. O. L. C. and the Mitchell mortgage, plaintiff and her husband were required to pay approximately $61 a month on each mortgage; in addition they were required to pay the taxes, amounting to not less than $175 a year, provide heat, janitor service, cleaning, light, gas, insurance, repairs, refurnishing of the rooms, and food and clothing for themselves. It is apparent that if all the rooms were at all times rented (a condition vainly to be hoped for) plaintiff and her husband could not meet the obligations imposed by the two mortgages. As before stated, the files of the H. O. L. C. bear no record of the approval of this second mortgage. Plaintiff's former attorney, who closed the H. O. L. C. transaction for her, and defendant Mitchell, do not testify that any representative of the H. O. L. C. approved the mortgage. Mitchell's attorney testified that Germer, who was employed by the H. O. L. C. principally as an interviewer, looked at the papers and said they would be all right and the deal could be closed promptly. The H. O. L. C. attorney who closed the transaction and received plaintiff's mortgage, testified that he had no knowledge of a second mortgage and no authority to pass on one. Germer stated that to his knowledge he had never consented to any second mortgage but that these were referred to the head of the department. Other employees of the H. O. L. C. were called to testify. None knew anything of the approval of the mortgage. Plaintiff testified that she was asked by Germer if she could pay the bills, and she said she wasn't sure—there were $61 on each mortgage every month; that Germer then went out with the papers and the two lawyers jumped on her and asked why she did not give a better answer. No conscientious employee of the H. O. L. C., mindful of the purposes for which the corporation was organized, could have ap-

proved the Mitchell mortgage, as it was impossible of performance. Furthermore, the two mortgages exceeded the H. O. L. C. appraised value which, in order to accomplish the purposes of the act, we may expect to be more liberal than appraisements made for loans in the ordinary course of business. The employee who passed upon the question whether a second mortgage would be permitted, testified that he knew of no instance in which a second mortgage had been approved where the second mortgage, plus the H. O. L. C. first mortgage, exceeded the H. O. L. C. appraised value of the property. In this state of the record the master's conclusion that the evidence as a whole did not warrant a finding that the H. O. L. C. had approved the Mitchell mortgage must be sustained.

Defendants further contend that if this mortgage was in violation of the rules and regulations of the H. O. L. C., plaintiff is equally to blame and a court of equity should not grant her relief. It is evident from the record that plaintiff realized the excessive burden she was assuming and that only the necessity of her situation compelled her to acquiesce in the arrangement. She was not in *pari delicto* with the defendants.

The Mitchell mortgage, being void and unenforceable, and plaintiff being entitled to relief, the decree should have provided for the repayment to her of $307.88, principal and interest paid on account of it (*Meek v. Wilson,* 283 Mich. 679, 278 N. W. 731; *McAllister v. Drapeau,* 14 Cal. (2d) 102, 92 P. (2d) 911) and all costs, including the master's fees, should have been taxed against the defendants. (*Peoples Gas Light & Coke Co. v. Gibbons,* 219 Ill. App. 388.)

The decree of the circuit court of Cook county is reversed and the cause remanded with directions to the circuit court of Cook county to modify the decree in accordance with this opinion.

*Reversed and remanded with directions.*

O'Connor, P. J., and Matchett, J., concur.