JAMES MURPHY, Plaintiff-Appellant, *v.* JAMES M. ROCHFORD, Superintendent of Police of the City of Chicago, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 76-1223

Opinion filed December 8, 1977.

John F. Keefe, of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Robert L. Thompson, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

In this action the plaintiff, James Murphy, a former lieutenant in the Chicago Police Department, sought issuance of a writ of mandamus to compel payment of his salary for the period of his suspension from the department. Defendants in the suit were the Chicago Police Board and the following city officials: James Rochford, who was then superintendent of police, Clark Burrus, city comptroller, and Joseph Bertrand, city treasurer. Defendants moved to strike and dismiss the complaint and also moved for summary judgment. Following a hearing on the motions the trial court granted summary judgment for defendants. Plaintiff has

appealed from that order, basing that appeal generally on three assertions: (1) summary judgment was improperly granted on the basis of a release which was void for lack of consideration; (2) the suit was not barred by laches; (3) this suit should have been governed under *res judicata* principles by a prior Federal decision.

We reverse and remand for trial.

■■ On review of an order granting summary judgment we must determine whether the trial court correctly determined that no genuine issue of material fact remained for trial; if no such issue remained, then we must determine whether judgment was correctly entered for the movant. (*Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1972), 9 Ill. App. 3d 408, 292 N.E.2d 205.) To that end we will summarize the facts before the trial court as established by the pleadings.

On July 22, 1972, plaintiff was suspended by the superintendent of police for allegedly violating certain rules of conduct of the Chicago Police Department. The alleged violations stemmed from plaintiff's pleading of the Fifth Amendment and refusal to testify before a Federal grand jury on June 21, 1972. The suspension continued until plaintiff resigned from the department on January 7, 1973. Plaintiff, whose monthly salary was $1,608, was not paid for the period of his suspension.

On January 24, 1973 the plaintiff signed the following release:

> "For and in consideration of the sum of one dollar ($1.00) to me in hand paid and other good and valuable considerations, the receipt of which is hereby acknowledged, I hereby release and waive any and all claims for salary, rights of action or causes of action which I have or may have against the City of Chicago, arising out of any thing done or left undone from the beginning of the world down to the signing of these presents, and particularly because of my resignation from the office or position of lieutenant in the Department of Police of the City of Chicago on or about the 8th day of January A.D. 1973, and for all salary and compensation during the period from 22 July 1972 to and including the date of 8 January 1973."

After plaintiff's resignation a suit was filed by six other police officers and by the Confederation of Police (C.O.P.) on behalf of its members challenging the propriety of suspensions and firings of those six officers. The departmental actions against those officers were based on alleged violations of the same rules involved in plaintiff's suspension, and also arose out of invocation of the Fifth Amendment privilege against self-incrimination before a grand jury. The suit was filed in the Federal District Court of the Northern District of Illinois, and resulted in an injunction requiring the defendants (officials of the Police Department, including Superintendent Conlisk, and members of the Police Board), to

reinstate the plaintiffs to their jobs with payment of back wages. Defendants were additionally enjoined and restrained from "penalizing plaintiffs in any way for their assertion of their rights against self-incrimination \* \* \*." The judgment was affirmed on appeal by the United States Court of Appeals for the Seventh Circuit on November 29, 1973. *Certiorari* was denied by the United States Supreme Court on April 22, 1974. (*Confederation of Police v. Conlisk* (7th Cir. 1973), 489 F.2d 891, *cert. denied* (1974), 416 U.S. 956, 40 L. Ed. 2d 307, 94 S. Ct. 1971 (hereinafter *Conlisk*.)) In his pleadings plaintiff stated that he was a member of the C.O.P. at "all times relevant."

Plaintiff instituted this action on August 20, 1974.

## I.

■■■ The order of the trial court was clearly based on the release signed by the plaintiff. Plaintiff generally alleges that the release was invalid for lack of consideration, specifically arguing that the recited consideration of one dollar was as a matter of law insufficient to support his waiver of his salary for the period of his suspension. But plaintiff is relying on an inapplicable, although correct, legal doctrine, that "\* \* \* payment of a part of a fixed and certain demand which is due and not in dispute is no satisfaction of the whole debt, even where the creditor agrees to receive a part for the whole and gives a receipt for the whole demand." (*Ostrander v. Scott* (1896), 161 Ill. 339, 345, 43 N.E. 1089, 1090; cited in *Mederacke v. Becker* (1970), 129 Ill. App. 2d 434, 263 N.E.2d 257.) As the court in *Ostrander* went on to state, "[This rule] has no application to the honest settlement of unliquidated or disputed demands. \* \* \* [I]f the balance due is disputed and the subject of an honest settlement and adjustment by the parties, such settlement will bar a recovery." (*Ostrander*, 161 Ill. 339, 345, 43 N.E. 1089, 1090.) At the time plaintiff signed the release, it was not established that any salary was due him for the period of his suspension. The Federal suit which he now claims established his right to that salary had not even been commenced at that time. Therefore, plaintiff's salary claim was in dispute and subject to a valid settlement for a lesser amount at the time he signed the release. In such a situation the courts generally will not inquire into the sufficiency of the consideration. *Wickstrom v. Vern E. Alden Co.* (1968), 99 Ill. App. 2d 254, 240 N.E.2d 401.

Ordinarily then, the consideration cited, "one dollar \* \* \* and other good and valuable considerations," would be presumed to be adequate. But, in the hearing on this motion before the trial court, counsel for defendants chose to elaborate on the nature of the consideration involved. The test of a motion for summary judgment is in the entire record. (*Klesath v. Barber* (1972), 4 Ill. App. 3d 86, 280 N.E.2d 283.) Therefore,

we have reviewed the record of that hearing. At that hearing defendants' counsel stated:

> "The Court understands valuable consideration. In other words, not proceeding to go to trial and let [*sic*] him resign and he [*sic*] would withdraw all of the charges before him—before the Board. That is the consideration he was seeking, because even if he resigned, he could have been charged, tried, and convicted * * *".

■■■ These representations of fact by defendants' attorney strongly suggest that part of the consideration for the release signed by plaintiff was an agreement not to prosecute him. An agreement not to prosecute is void because it is against public policy, as well as possibly constituting a criminal offense. (*Griner v. Griner* (1976), 34 Ill. App. 3d 792, 340 N.E.2d 304; *Williamsen v. Jernberg* (1968), 99 Ill. App. 2d 371, 240 N.E.2d 758; Ill. Rev. Stat. 1975, ch. 38, par. 32—1; also see *Boyd v. Adams* (7th Cir. 1975), 513 F.2d 83.) Clearly, such an agreement could not constitute valid consideration for the release. Nor could the recited consideration of one dollar suffice, for it is not logically separable from the rest of the agreement. In such a case illegality of part of the consideration renders the entire agreement unenforceable. *Frederick v. Frederick* (1976), 44 Ill. App. 3d 578, 358 N.E.2d 398.

■■■ It is clear under Illinois law that this statement of fact by defendants' attorney, made in his capacity as their attorney at a judicial hearing, may be used as an admission of fact by them. (*Bauer v. Saper* (1971), 133 Ill. App. 2d 760, 272 N.E.2d 703; *Wilson v. Spring* (1872), 64 Ill. 14; 2 Jones on Evidence §358 (5th ed. 1958).) In *Bauer* the relator filed a mandamus action to compel the city of Joliet to reinstate him as a policeman. On appeal of the dismissal of that action it was held that the relator had resigned his position, thereby relinquishing his legal interest in employment by the city. That finding of fact was based on the admission of relator's attorney, made during the attorney's argument on the motion to dismiss, that relator had tendered his resignation. The appellate court stated:

> "The law is well settled in Illinois that an attorney representing his client may make admissions which are binding upon his client. [Citations.]
>
> Attorneys are deemed the agents of their clients for the purpose of making admissions in all matters relating to the progress and trial of the action. Indeed any fact which bears upon the issues involved and which has been admitted by counsel may be the ground of the court's procedure equally as if established by the clearest proof." (*Bauer*, 133 Ill. App. 2d 760, 762-63, 272 N.E.2d 703, 705.)

We also note that where the parties have not explicity raised the issue of the illegality of a contract, the court is under obligation to raise the matter *sua sponte*. *Merchandise Mart National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 365 N.E.2d 688; *Lind v. Spannuth* (1956), 9 Ill. 2d 311, 137 N.E.2d 360.

We do not now decide that the consideration for the release was an illegal or invalid agreement not to prosecute the plaintiff. The cases we have cited involved instances of private citizens making such agreements with respect to possible criminal prosecutions for crimes against them. In the case at bar the prosecution alluded to appears to involve administrative process by the Police Board as well as State criminal prosecution. In their brief defendants state that aside from the consideration recited in the release, "[t]he benefit that plaintiff derived is that the Police Department can no longer bring charges against the plaintiff." Additionally defendants state in their brief that "[u]pon resigning, plaintiff escaped the Police Department's bringing further charges, including dismissal, against the plaintiff." But inasmuch as plaintiff had already resigned from the department, as indicated in the release, it is unclear to this court whether any further administrative proceedings could have been brought against him by the department. If that is true, then the only logical conclusion is that the references to charges and convictions concerned criminal prosecution. Thus, it is clear that important issues of fact remain for the finder of fact on remand. It must be determined whether part of the consideration was an agreement not to prosecute the plaintiff in a criminal action. Even if it is determined that the agreement related only to Police Board proceedings, the trial court must determine whether such a promise is so intertwined with the possibility of criminal prosecution as to render it, too, void as against public policy.

## II.

■■ While we have noted that the trial court relied solely on the release in its order granting defendants summary judgment and have determined that genuine and material issues of fact prevent affirmance of the trial court on the basis of that release, we also note a reviewing court is not limited or confined to the precise reasons given by the trial court in entering summary judgment. (*Weber v. Woods* (1975), 31 Ill. App. 3d 122, 334 N.E.2d 857.) For that reason we also consider defendants' claim that laches should bar this suit. Our supreme court has defined laches as "* * * such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552, 147 N.E.2d 341, 344;

cited and applied in *Slatin's Properties, Inc. v. Hassler* (1972), 53 Ill. 2d 325, 291 N.E.2d 641.) To assert the defense a party must show both that there was unreasonable delay in bringing the action (*Naden v. Naden* (1976), 37 Ill. App. 3d 571, 346 N.E.2d 202), and that the delay materially prejudiced him. *Bobin v. Tauber* (1976), 45 Ill. App. 3d 831, 360 N.E.2d 368.

▪▪▪ Although application of the doctrine of laches depends on the particular circumstances of each case (*Zegers v. Zegers, Inc.* (1976), 38 Ill. App. 3d 546, 348 N.E.2d 210), it has been established that a complaint for mandamus must be brought within six months unless there is a reasonable explanation given for further delay. (*People ex rel. Fleming v. Conlisk* (1973), 11 Ill. App. 3d 520, 299 N.E.2d 537, citing *People ex rel. Cronin v. Cahill* (1969), 118 Ill. App. 2d 18, 254 N.E.2d 161.) Such reasonable excuse is available where plaintiff has awaited the final determination of a suit in which issues crucial to his claim are litigated. (*People ex rel. Casey v. Health & Hospitals Governing Com.* (1976), 37 Ill. App. 3d 1056, 347 N.E.2d 261.) In the case at bar plaintiff did not file suit until almost 20 months after his resignation. However, shortly after that resignation the suit in *Conlisk* was instituted, challenging the very rules utilized to suspend plaintiff. That suit was decided by the District Court June 7, 1973, affirmed by the Court of Appeals on November 29, 1973, and *certiorari* was denied by the United States Supreme Court on April 22, 1974. Plaintiff filed his action on August 20, 1974, four months after the denial of *certiorari*. Thus we conclude plaintiff did not unreasonably delay bringing this action.

Additionally, defendants cannot reasonably establish any material prejudice to them from any delay in bringing this suit. Because of the *Conlisk* suit they were aware that the police rules used against plaintiff were under judicial attack. They cannot now claim surprise when plaintiff brought his suit four months after the final appeal of that action was denied. Plaintiff is not seeking reinstatement, which might require additional action with respect to his replacement. In seeking payment of wages for the period of his suspension he is not placing the department in any worse position than it would have been had he sought that same remedy immediately after he resigned. Defendants could not have claimed material prejudice then, nor can they do so now. Since defendants cannot establish either of the essential elements of a laches claim, we determine that laches does not bar this suit.

### III.

Because we determine that for the reasons herein stated this cause must be remanded, we deem it advisable and appropriate to add the following analysis:

■■ Plaintiff asserts that the prior Federal ruling in *Conlisk* requires, under the doctrine of *res judicata*, the determination of this suit in his favor. "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." (*Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 648, 344 N.E.2d 770, 779.) It is obvious from this statement that the rule is inapplicable in the case at bar. The suspension of the plaintiff in the cause before us was not specifically at issue in *Conlisk*. The cause of action there was based on actions taken against six other policemen, although those actions were based on alleged violations of the same rules involved in the present cause. The court in *Conlisk* did not consider plaintiff's suspension, nor did it determine the validity of the release he signed or his entitlement to back pay. Because different causes of action are involved in these two suits, *res judicata* is not applicable to them.

If at trial it is determined that the release is invalid, plaintiff's collateral estoppel claim will become relevant. He contends that under the principle of collateral estoppel, or estoppel by verdict, defendants are barred from relitigating the issue of the constitutionality of the rules under which he was suspended, since *Conlisk* determined those same rules to be unconstitutional.

■■ Our supreme court has provided a succinct statement of the doctrine: "Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not." *Hoffman v. Hoffman* (1928), 330 Ill. 413, 417, 161 N.E. 723, 725; cited and applied in *People v. Williams* (1975), 59 Ill. 2d 557, 322 N.E.2d 461.

If this matter is raised plaintiff will have to establish that he was a party in *Conlisk*, since the parties must be the same for collateral estoppel to apply. Plaintiff has alleged in his pleadings that he was a member of the C.O.P. at "all times relevant," a conclusory statement at best. The finder of fact must determine whether plaintiff was a member at the time the Federal suit was filed, inasmuch as he had previously resigned from the police department.

Plaintiff will also have to establish that the finding of unconstitutionality of the rules in *Conlisk* applies as well to his situation. The Court of Appeals in *Conlisk* applied the rule that "* * * a public employer may discharge an employee for refusal to answer where the employer both

asks specific questions relating to the employee's official duties and advises the employee of the consequences of his choice, *i.e.*, that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings. (*Conlisk*, 489 F.2d 891, 894.) The court found that the six policemen in that cause were not, with one exception, asked specific questions pertaining to their official duties. They were only asked about their invocation of the Fifth Amendment before the grand jury. Nor were they told that refusal to answer the questions would result in dismissal but that any answers they gave could not be used against them in criminal proceedings. Because of these failures the actions taken against these men were held to be unconstitutional. The rules under which these actions were taken were held unconstitutional *insofar* as they operated to deny the plaintiffs their Fifth Amendment privilege against self-incrimination. Clearly then, in order for plaintiff to successfully invoke the doctrine of collateral estoppel as to the issue of the invalidity of the rules under which he was suspended, he must establish that he too was denied the procedural safeguards required in *Conlisk*. The finder of fact must establish that plaintiff was questioned in violation of his Fifth Amendment privilege in the same manner in which the plaintiff police officers in *Conlisk* were questioned. Without such a finding *Conlisk* may still be persuasive in determining the validity of the rules at issue, but it will not collaterally preclude relitigation of the issue.

For the foregoing reasons, the order of the trial court is vacated and the cause remanded for trial.

DIERINGER, P. J., and JOHNSON, J., concur.