MARIA P. O'HARA, Plaintiff-Appellant, v. AHLGREN, BLUMENFELD
AND KEMPSTER, a Partnership, *et al.*, Defendants-Appellees.
First District (5th Division)   No. 84—0105

Opinion filed July 24, 1987.

David M. Nelson, of Murtaugh, Nelson & Sweet, of Chicago, for appellant.

Alvin R. Becker and Howard A. London, both of Chicago (Beermann, Swerdlove, Woloshin, Barezky & Berkson, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:
This is an appeal by plaintiff, Maria P. O'Hara (O'Hara), a non-lawyer, from a summary judgment in a breach of contract action

against defendants, who are all lawyers, involving the law practice of plaintiff's deceased husband, Barratt O'Hara II. Barratt O'Hara II practiced law in the immigration and naturalization field until his death on December 28, 1978.

In March 1979, plaintiff and defendants, Robert D. Ahlgren (Ahlgren) and Barry E. Blumenfeld (Blumenfeld), partners in a Chicago law firm, entered into a written agreement prepared by the partners wherein the plaintiff transferred to defendants the goodwill associated with the name of her deceased husband, Barratt O'Hara II, in connection with the practice of law. The defendants agreed to pay plaintiff a specified percentage of monies received by them through the transaction. The agreement contemplated the merger of Barratt O'Hara II's law firm with the law firm of defendants Ahlgren and Blumenfeld and provided that Maria O'Hara was to receive from the defendants as follows:

> *Before physical merger*: One third [1/3] of the net income derived from Barratt O'Hara's law practice. The term "income" was defined as fees obtained from cases of Barratt O'Hara's past or current immigration clients or from future clients developed from past or current clients.

> *After physical merger*: Twenty-five percent [25%] of the gross receipts of the O'Hara business as defined above for the first year, decreasing at the rate of 5% per year and terminating five years after the physical merger.

O'Hara was to be given an accounting at her request for five years after the physical merger and at least once a year. Ahlgren and Blumenfeld could buy O'Hara's furniture and fixtures if the parties could agree on a price. She was given the right to sell those items absent such agreement. Defendants were given the right to use Barratt O'Hara's name on their stationery and office door.

Plaintiff instituted the instant action to recover the sums of money due her under the contract. In her prayer for relief, O'Hara seeks an accounting, a judgment of all amounts owing, punitive damages, attorney fees, termination of the contract, and injunctive relief. Defendants answered the complaint and raised three affirmative defenses. Plaintiff replied to the affirmative defenses.

Plaintiff filed a motion for partial summary judgment seeking a finding that the business agreement she had with defendants was a valid and enforceable one and for other relief, including partial damages. Defendants replied to plaintiff's motion with their own motion for summary judgment suggesting the illegality of the agreement.

▄▄ The state of the record discloses a nonlawyer widow of a

lawyer selling the "goodwill" of her deceased husband's law practice for a percentage of fees obtained by the law firm from the decedent's past or current clients. The record also discloses that defendant lawyers prepared the agreement. Serious violations of the Illinois Code of Professional Responsibility are suggested by both the plaintiff and defendants. These alleged violations were committed not by plaintiff, but by defendants. Because of at least one of these violations, the trial court should have denied both plaintiff's motion for partial summary judgment and defendants' motion, thereby giving relief to neither party. *Schnackenberg v. Towle* (1954), 4 Ill. 2d 561, 123 N.E.2d 817.

The fee-splitting arrangement made by O'Hara with defendants is in stark violation of the Illinois Code of Professional Responsibility, which precludes the splitting or sharing of fees between a lawyer or a law firm and a nonlawyer with certain exceptions not applicable to this case. Rule 3—102 of the Code of Professional Responsibility (107 Ill. 2d R. 3—102) states:

"(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

(1) An agreement by a lawyer with his firm, partner, or associate may provide for the payment of money, over a reasonable period of time after his death, to his estate or to one or more specified persons.

(2) A lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer.

(3) A lawyer or law firm may include nonlawyer employees in a retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement."

The Code was adopted June 3, 1980, effective July 1, 1980. The contract involved in this case was made in March 1979, prior to the adoption of this Code. In *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764, this court held that public policy considerations precluded a fee-sharing arrangement where there was absolutely no showing of sharing of services or responsibilities. The court held such an arrangement to be against public policy even though the agreement was made prior to the effective date of the Code of Professional Responsibility.

If a lawyer who shares no services or responsibilities cannot make a split-fee arrangement like the one involved in this case with

another lawyer, based on public policy considerations, it is an obvious corollary that a lawyer's widow who shares no responsibilities or renders no service cannot split fees with a law firm to which she attempts to sell her husband's goodwill. To place a judicial imprimatur on such an arrangement would be a perversion of a sound public policy.

Plaintiff, in reply to defendants' defense of unenforceability, raises the issue of estoppel, suggesting that defendants, as drafters of the agreement and receivers of benefits of it, are now barred from raising its illegality. This court in *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764, rejected the concept of estoppel in a case involving a similar illegal agreement.

■ An exception to the estoppel theory arising in cases involving some illegal contracts is where the parties are not *in pari delicto.* (*Merchandise National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 365 N.E.2d 688.) *In pari delicto* is a legal principle that, in some situations, permits the less culpable of various parties to obtain relief from otherwise illegal or tortious transactions or occurrences like those involved in this case. There is case law that indicates a court could grant relief if the parties are not *in pari delicto.* *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 532, 417 N.E.2d 764.

■ In this case it was defendants who raised the argument that the parties were *in pari delicto* because plaintiff knowingly sold the goodwill of her husband. The only suggestion that the plaintiff was not *in pari delicto* with the defendants is that they were lawyers and drafted the agreement and received the benefits of it. That is not enough. There must be some pleading or evidence that plaintiff had no knowledge of the illegality and that the defendants did. Absent such evidence or pleading disclosing plaintiff's lack of knowledge of illegality and defendants' awareness of same, it would appear that the parties were *in pari delicto.*

Since the contract was void as against public policy, the trial court should have denied both motions for summary judgment, dismissed the complaint, and left the parties where it found them. Where enforcement of an illegal contract is sought, the courts will aid neither party, but will leave them where they have placed themselves, since the parties are *in pari delicto* and can recover nothing under the contract. *Merchandise National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 370, 365 N.E.2d 688.

For the above reasons the trial court's denial of plaintiff's motion for partial summary judgment is affirmed; its granting of summary judgment for defendants is reversed; and the case is remanded

to the trial court with directions to enter an order dismissing plaintiff's complaint.

Affirmed in part; reversed in part and remanded with directions.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:

I dissent. According to the record, plaintiff, Maria O'Hara, the widow of attorney Barratt O'Hara II, entered into an agreement in 1977 to sell the goodwill and physical property of decedent's law office and practice to defendants' law firm and its principals for a percentage of income which was derived from decedent's practice. The agreement also required defendants to provide periodic accountings to plaintiff. The agreement was drafted by the defendants, who were lawyers. The agreement was signed by plaintiff, a lay person, without the advice or benefit of a lawyer.

Pursuant to the agreement, plaintiff transferred case files of decedent's clients from his practice to defendants, who provided legal representation for the clients listed in those files. In 1981, plaintiff cancelled the contract and demanded an accounting from defendants.

On September 15, 1982, plaintiff filed the instant complaint, which alleged that defendants had breached their agreement by failing to pay her the agreed remuneration and to provide an accounting. Plaintiff's complaint demanded that the contract be rescinded, that defendants be ordered to return the physical property of the decedent's law office to plaintiff and promptly pay her an amount to be established upon a proper accounting. Defendants filed a response which denied plaintiff's allegations and also asserted the affirmative defenses that the goodwill of decedent's law practice did not survive his death and that it was not a legal consideration which was capable of being transferred by plaintiff.

Plaintiff responded to defendants' affirmative defenses, *inter alia*, that plaintiff had signed the agreement without the advice of an attorney and that, inasmuch as defendants, who were attorneys, had prepared the agreement and had received income in excess of $100,000 from O'Hara's clients, the unjustly enriched defendants should be estopped from denying the validity of the agreement.

It is uncontested that defendants derived income from decedent's clients who were listed in decedent's files and who had been referred to defendants by plaintiff pursuant to their agreement. A portion of that income may have been earned by the decedent and owed to him

by his clients before his death. Such income would have been part of decedent's estate and would rightly pass to plaintiff as his heir.

Plaintiff filed a motion for partial summary judgment which alleged, *inter alia,* that there was no genuine issue of material fact, that defendants had acknowledged the legal sufficiency of their agreement and that defendants owed plaintiff a minimum of $11,351. Attached to the motion were lists of files of decedent's clients that plaintiff had given to defendants and letters which the defendants had sent to plaintiff on May 16, 1980, July 22, 1981, and February 2, 1983. The letter of May 16, 1980, acknowledged plaintiff's right to review records related to the files pursuant to their agreement. The letter of July 22, 1981, was a response to plaintiff's request to cancel the agreement, and the letter of February 2, 1983, explained the accounting system and included audit sheets.

Subsequently, defendants filed a brief in opposition to plaintiff's motion for partial summary judgment. Defendants also filed a cross-motion for summary judgment. Defendants argued that there was no genuine issue of material fact, contending that the parties had agreed that the goodwill of decedent's law practice was the consideration plaintiff had given in exchange for payment of a percentage of the income to be derived by defendants from decedent's cases. Defendants further asserted that such consideration was insufficient and nontransferable by plaintiff and that the contract was void and against public policy.

Therefore, plaintiff filed a response to defendants' brief and motion. Attached to plaintiff's response was her affidavit which alleged that plaintiff was decedent's widow and the sole beneficiary of his estate, that in March 1979, after his death, plaintiff asked one of the defendant attorneys if he would take over decedent's cases, that the attorney drafted an agreement and sent it to her through the mail, that without the advice of an attorney plaintiff signed the agreement and returned it to defendants and that defendants knew that plaintiff had not been advised by counsel before she signed the agreement.

In the case at bar, the majority has found that plaintiff was estopped from raising the illegality and unenforceability of the contract because plaintiff and defendants were in *pari delicto.* The majority relies upon *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 417 N.E.2d 764, *Merchandise National Bank v. Kolber* (1977), 50 Ill. App. 3d 365, 365 N.E.2d 688, and *Schnakenberg v. Towle* (1954), 4 Ill. 2d 561, 123 N.E.2d 817, to support its decision. However, I believe that the reliance of the majority has been misplaced. The facts in those cases are distinguishable from the facts herein, since the parties in

the cited cases were *in pari delicto* and the parties herein were not.

*Fleischer* involved a fee splitting agreement between attorneys. The issue there was whether an agreement to compensate an attorney for referring clients to a law firm was enforceable. This court found that the contract was unenforceable because it was against public policy. The contracting parties were attorneys, whom we presume had knowledge of the law, and as such were equally culpable and *in pari delicto*.

In *Kolber*, two attorneys and a podiatrist had entered into an agreement to defraud a bank of certain funds. Although the podiatrist was a nonattorney, he was *in pari delicto* with the attorneys because the podiatrist and the attorneys had full knowledge of the fraudulent scheme.

*Towle* involved the enforceability of a fee splitting agreement between an attorney and a sitting judge, both of whom represented the same party in the prosecution of a claim for the refund of certain taxes. In a *per curiam* decision, our supreme court refused to assist either the judge or attorney, whom the court found to be "on equal footing" in making the agreement. 4 Ill. 2d 561, 570, 123 N.E.2d 817.

In the instant case the majority opined that plaintiff's factual allegation that she was not *in pari delicto* with defendant lawyers, who drafted the agreement and benefited from it, was insufficient to establish plaintiff's claim because she did not allege that "plaintiff had no knowledge of the illegality and that defendants did." By its analysis the majority woefully begs the question and substitutes form over substance. It is well settled that lawyers are presumed to know the law. (*Somerset Importers v. Gold Standard Liquors* (1974), 18 Ill. App. 3d 39, 42, 309 N.E.2d 286; *In re Estate of Britt* (1983), 112 Ill. App. 3d 186, 188, 445 N.E.2d 367) and are held to a high standard of care when dealing with nonlawyers.

Here it is uncontested that plaintiff, a nonlawyer, signed the contract drafted by one of the defendant attorneys without the benefit of legal counsel. Since the defendants drafted the contract, it must be construed more strictly against them. (*Smith v. Connecticut General Life Insurance Co.* (1984), 122 Ill. App. 3d 725, 728, 462 N.E.2d 604.) Moreover, defendants' letters to plaintiff clearly established that defendants were unconscionably enriched from the contract in that they derived fees from decedent's clients who had been referred to defendants by plaintiff.

Defendants were estopped from raising the illegality of the contract which they drafted and from which they benefited. Plaintiff, a nonlawyer, was not *in pari delicto* with defendant lawyers and their

law firm because of their unequal contractual position.

I believe the facts herein are more similar to those in *Rasmussen v. Mitchell* (1944), 321 Ill. App. 618, 53 N.E.2d 467. There the plaintiff, Sue Rasmussen, widow, whose home had been the subject of a foreclosure, entered into an illegal agreement with defendant to obtain a second mortgage on plaintiff's home. There, we found that plaintiff was not *in pari delicto* with defendant because of the unequal nature of their positions.

I must also note that the contract herein was for the sale of the goodwill and physical property of decedent's law practice. The amount paid for the physical property was to be determined by defendants upon their inspection of the property. Although the goodwill from decedent's practice was not legal consideration transferrable by plaintiff, the physical property was. According to *Corti v. Fleisher* (1981), 93 Ill. App. 3d 517, 533, 417 N.E.2d 764, that portion of the contract involving the sale of the physical property was valid and severable from that portion of the contract the majority found invalid. Clearly, the agreement to exchange the physical property for money was enforceable by the trial court.

Based on the foregoing, I would reverse the orders entered by the circuit court upon plaintiff's and defendants' motions for summary judgment and remand for further proceedings.